EDWARD J. WYNNE, SBN 165819
ewynne@wynnelawfirm.com
GEORGE R. NEMIROFF, SBN 262058
gnemiroff@wynnlawfirm.com
WYNNE LAW FIRM
Wood Island
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile: (415) 461-3900

*Attorneys for Plaintiffs and the putative class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LAURA LOPEZ, SAM WILLIS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION and DOES 1 through 10, inclusive,

Defendants.

Case No. 18-cv-02346-VC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEFENDANT BANK OF AMERICA, N.A. AND ITS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: June 19, 2019
Time: 10:00 a.m.
Ctrm: 4, 17th Floor
Judge: Vince Chhabria

**NOTICE OF MOTION AND MOTION**

TO THE ABOVE ENTITLED COURT, AND TO DEFENDANT, THROUGH ITS ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on, June 19, 2019, at 10:00 a.m. in Courtroom 4, 17th Floor, of the above-captioned court located at 450 Golden Gate Ave., San Francisco, California, Plaintiffs Laura Lopez and Sam Willis, will move for an order seeking sanctions against Defendant Bank of America, National Association and its counsel John Van Hook, Sylvia Kim, Michael Mandel and Ashley Robinson Li of McGuireWoods LLP pursuant to Fed. R. Civ. P. 37, Northern District Local Rule 37-4 and the Court's Order Re Discovery Letters [ECF #56]. This motion will be based on this notice and motion, the accompanying points and authorities, the Declaration of Edward J. Wynne offered in support, and such other matters of which the Court may take notice.

By way of this motion, Plaintiffs are seeking the following evidentiary sanctions against Defendant and its counsel:

1. Defendant must produce the documents ordered by the Court in its April 15, 2019 Order Granting in Part Plaintiffs' Discovery Request (Dkt. 53) and must provide the Court a status update as to its compliance when the records are produced;
2. Defendant is precluded from introducing or relying, for any purpose, on any evidence not previously produced to Plaintiffs before April 22, 2019;
3. The Court should draw an inference that all withheld documents are detrimental to Defendant's position; and,
4. Defendant is estopped from arguing that the Salesforce data produced to Plaintiffs on April 22, 2019 is not representative of the entire putative class.

By way of this motion, Plaintiffs are seeking monetary sanctions in the amount of $44,490.00 representing Plaintiffs' reasonable attorneys' fees expended in seeking Defendant's compliance with the Court's discovery orders.

Dated: May 8, 2019

WYNNE LAW FIRM

By: /s/ *Edward J. Wynne*
Edward J. Wynne
Attorney for Plaintiffs
Laura Lopez and Sam Willis

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. The Parties' Meet and Confer Efforts Prior to the Court Orders .......... 2
B. The January 8, 2019 Case Management Conference Discovery Order .......... 3
C. The Parties’ Joint Letter Brief .......... 4
D. The Court’s April 15, 2019 Discovery Order .......... 5
E. Defendant’s Failure to Comply With The Court’s April 15, 2019 Discovery Order .......... 6
F. Defendant’s Corporate Designee Establishes Defense Counsel Has Made Material Misrepresentations To the Court Regarding the Court-Ordered Documents and Data To Be Produced .......... 7
G. Documents That Defendant Has Failed To Produce Despite The Court’s Discovery Order .......... 8

III. ARGUMENT .......... 9

A. The Court Has Broad Discretion to Award Sanctions For Defendant’s Bad Faith Refusal to Comply With The Court’s Prior Discovery Orders .......... 9
B. Evidentiary Sanctions Are Warranted Due to Defendant’s Failure to Obey the Court’s Discovery Orders .......... 9

1. The First Two Factors Weigh Heavily In Favor Of Evidentiary Sanctions .......... 9

2. Plaintiffs Have Been Severely Prejudiced By Defendant’s Misconduct .......... 10

3. The Public Policy Interest of Disposing of Cases On the Merits Weighs in Favor of Evidentiary Sanctions .......... 12

4. There Are No Lesser Sanctions Available To Ameliorate the Prejudice Caused By Defendant’s Discovery Abuse. .......... 13

a. Discovery Cut-Off .......... 13

b. Adverse Inference .......... 13

c. Salesforce Data .......... 14

C. The Court Should Impose Severe Monetary Sanctions On Defendant and its Counsel For Failure To Obey The Court’s Discovery Orders .......... 14

IV. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adriana Int'l Corp v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990) ..... 9, 13

*Carson Cheng v. AIM Sports*,
No. CV10-3814-PSG (PLAx), 2011 WL 13175663 (C.D. Cal. Aug. 23, 2011) ..... 10, 13

*Commodity Futures Trading Commn v. Noble Metals Int'l*,
67 F.3d 766 (9th Cir. 1995) ..... 9

*Henry v. Gill Industries,*
983 F.2d 943 (9th Cir. 1993) ..... 9

*Jang v. Sagicor Life Ins. Co.*,
2019 WL 699791 (C.D. Cal. Feb. 20, 2019) ..... 9, 10, 11, 12

*Lew v. Kona Hosp.*,
754 F.2d 1420 (9th Cir. 1985) ..... 14

*Richmark Corp. v. Timber Falling Consultants*,
959 F2d 1468 (9th Cir. 1992) ..... 14

*Toth v. Trans World Airlines,*
862 F2d 1381 (9th Cir. 1988) ..... 14

*Unigard Sec. Ins. V. Lakewood Eng'g & Mfg. Corp.*,
982 F.2d 363 (9th Cir. 1992) ..... 9

## STATE CASES

*Walsh v. IKON Office Solutions,*
148 Cal.App.4th 1440 (2007) ..... 11

## STATUTES, RULES AND REGULATIONS

California Evidence Code,
§ 412 ..... 14

California Evidence Code,
§ 413 ..... 14

Federal Rules of Civil Procedure,
Rule 30(b)(6) ..... 1, 7

Federal Rules of Civil Procedure,
Rule 37(b)(2)(A)(I) ..... 9

Federal Rules of Civil Procedure,
Rule 37(b)(2)(C) ..... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Motion for Sanctions involves Requests for Production that Plaintiffs propounded to Defendant Bank of America on August 23, 2017. This Court has issued two discovery orders requiring Defendant to produce these documents to Plaintiffs and Defendant has failed to comply with both orders. (Dkt. Nos. 49 and 53.) Defendant has failed to obey the Court's discovery orders despite the Court's warning for failure to comply at the January 8, 2019 Case Management Conference.

Defense counsel John Van Hook made demonstrably false statements to the Court about the Salesforce data it produced pursuant to the first discovery order. (Dkt. 49.) Counsel's statements were contradicted by the deposition testimony of his own client, Defendant's Fed. R. Civ. P. Rule 30(b)(6) corporate designee, and the subsequent production of Salesforce data produced pursuant to the second discovery order. (Dkt. 53.) As of the filing of this motion, Defense counsel has yet to provide the Court or Plaintiffs' counsel with any explanation as to why it has failed to obey the Court's orders.

Defendant and its counsels' disregard for the Court's orders has been flagrant. The course of events leads to the inescapable conclusion that Defense counsel has withheld this information in bad faith because to produce it would be damaging to Defendant's efforts to defeat class certification and/or ultimately prevail on the merits of the case. Plaintiffs have been dogged in the pursuit of this data for good reason. The sampling of Salesforce data that has been produced reveals why it was so damaging to Defendant's defense of this case. The data shows that SBBs are not working outside Defendant's financial centers enough to maintain the outside salesperson exemption. Defendant's suppression of this Salesforce data and other critical documents in this case have severely prejudiced Plaintiffs' efforts to prepare its Motion for Class Certification that was filed on May 1, 2019. (Dkt. 58.) As such, Plaintiffs request the following evidentiary sanctions to ameliorate this prejudice going forward:

1. Defendant must produce the documents ordered by the Court in its April 15, 2019 Order Granting in Part Plaintiffs' Discovery Request (Dkt. 53) and must provide the Court a

status update as to its compliance when the records are produced;

2. Defendant is precluded from introducing or relying, for any purpose, on any evidence not previously produced to Plaintiffs before April 22, 2019;

3. The Court should draw an inference that all withheld documents are detrimental to Defendant's position; and,

4. Defendant is estopped from arguing that the Salesforce data produced to Plaintiffs on April 22, 2019 is not representative of the entire putative class.

Plaintiffs also seek monetary sanctions from Defendant Bank of America and its counsel, John Van Hook, Sylvia Kim, Michael Mandel and Ashley Robinson Li in the amount of $44,490.00. Plaintiffs have been prejudiced in having to incur substantial legal fees seeking Defendant's compliance with the Court's orders. In particular, Plaintiffs' counsel has expended considerable time seeking Defendant's compliance with the first discovery order; preparing a motion to compel resulting in the Court's issuance of a second discovery order; further informing the Court of Defendant's failure to comply with the second order; and, preparing the instant motion for sanctions. Defendant and its counsel should be ordered to pay monetary sanctions to fairly compensate Plaintiffs for Defendant's misconduct and deter such discovery abuse in the future.

## II. STATEMENT OF FACTS

### A. The Parties Meet and Confer Efforts Prior to the Court Orders

On August 23, 2017, Plaintiff Laura Lopez propounded her First Sets of Requests for Production and Special Interrogatories to Defendant Bank of America when this case was pending in Alameda Superior Court. On October 11, 2017, Defendant served Plaintiff with its written responses which did not contain any substantive responses. On March 6, 2018, Plaintiffs' counsel met and conferred with Defense counsel who agreed to produce responsive documents upon the parties entry of a stipulated protective order, which had previously been filed and was awaiting the Court's approval. (Dkt. 27.)[1]

Upon being removed to this Court and adding Sam Willis as a named plaintiff, on September 7, 2018, Plaintiffs' counsel sent Defense counsel comprehensive meet and confer correspondence. At that time, Defendant still had not produced any documents besides the named

[1] Declaration of Edward J. Wynne in Support of Plaintiffs' Motion for Sanctions ("Decl. of Wynne") at ¶ 2.

plaintiffs' personnel files.[2] Between September 7, 2018 and January 2019, Plaintiffs' counsel met and conferred numerous times with Defense counsel, and in each case Defense counsel agreed to produce the outstanding documents. However, in each instance, Defendant failed to produce the documents by the agreed upon date with no explanation. When Defense counsel initially failed to produce the documents by the agreed-upon date in mid-October 2018, Plaintiffs' counsel brought this issue before the discovery referee, Magistrate Judge Sallie Kim, who declined to compel production of the records citing an insufficient record. (Dkt. Nos. 32-35.)[3] The parties then resumed their meet and confer efforts which ended in the same result of Defense counsel agreeing to produce documents and then failing to do so by the agreed-upon date, followed with a request for an extension.[4]

With Plaintiffs' deadline to file their class certification looming in February 2019, taken in conjunction with Defense counsel's representations to produce the records, the parties agreed to stipulate to a continuance of the class certification briefing schedule. (Dkt. 36.) The Court denied the stipulation because the parties had not adequately explained why they had been unable to move the case along and set a case management conference for January 8, 2019. (Dkt. 38.) Plaintiffs used their portion of the joint CMC statement to provide the Court with a comprehensive outline of the course of discovery in the case to highlight Defendant's and its counsels' repeated failure to meet its discovery obligations. (Dkt. 40, pp. 1:20-7:8.)[5]

**B. The January 8, 2019 Case Management Conference Discovery Order**

At the January 8, 2019 CMC, lead Defense counsel, John Van Hook, failed to appear at the hearing and another partner from his firm, Sylvia Kim, who at that time had no connection to the case, appeared in his stead. During the CMC, the Court expressed its dissatisfaction with Defense counsel's conduct and ordered Defendant to produce three categories of documents by January 29, 2019. Specifically, the Court required Defendant to produce: (1) All Salesforce Activity Reports of the putative class of SBBs during the statutory period; (2) all SBB Partnerships for SBBs during the statutory period; and, (3) all documents that reflect Bank of America's expectations for the hours and activities of the SBB position during the statutory period (including prior versions). (Dkt. 49,

[2] Decl. of Wynne, ¶ 3.
[3] Decl. of Wynne, ¶ 4.
[4] Decl. of Wynne, ¶ 5.
[5] Decl. of Wynne, ¶ 6.

pp. 7:9-11:23, 12:19-17:2.)[6]

At the conclusion of the CMC, the Court withdrew the referral to Judge Kim for discovery purposes and in no uncertain terms admonished the parties regarding his expectations going forward:

> **The Court**: And I will go ahead and withdraw the referral to Judge Kim for discovery purposes. And we'll freely sanction people for any – even the slightest problem with discovery will result in sanctions in this case going forward. Both sides are instructed to err very strongly on the side of turning over information. If you have any doubt about whether the information is to be turned over, you turn it over, both sides.
>
> **Mr. Wynne**: May I ask a question, your honor?
>
> **The Court**: Yes.
>
> **Mr. Wynne**: And I'm sure it's in your standing orders, but if in the exceptional event that there is a discovery dispute, does your honor want a joint letter brief –
>
> **The Court**: Tee up a joint letter as required by my standing order.
>
> **Mr. Wynne:** Okay.
>
> **The Court**: And I will almost certainly award costs and fees to the losing side [sic] in any discovery dispute, in additional to considering additional sanctions on the attorneys.
>
> **Mr. Wynne**: Understood.

(Dkt. 49, pp. 18:17-19:10.)

**C. The Parties' Joint Letter Brief**

Notwithstanding the Court's discovery order, Defendant's production on January 29, 2019 only partially complied by producing six spreadsheets of Salesforce Data and only 438 pages of documents. The production was deficient in every way. Plaintiffs' counsel raised the deficiencies with Defense counsel and on March 21, 2019 the parties submitted a joint letter brief to the Court. (Dkt. 52.)[7] Plaintiffs' portion of the Joint Letter Brief informed the Court that Defendant had failed to comply with its order because the Salesforce Data was unusable. Plaintiffs provided the Court with an exemplar to demonstrate how the Salesforce entries were devoid of information and could not possibly be the data that is entered into the Salesforce system and relied upon by Defendant's managerial employees. Plaintiffs also informed the Court that Defendant had failed to produce any SBB Partnership Agreements for the putative class. Finally, Plaintiffs informed the Court that while

[6] The Court granted Plaintiffs' request to extend the deadline to file their Motion for Class Certification until May 1, 2019, with the hearing set for June 27, 2019. (Dkt. 49.)
[7] Decl. of Wynne, ¶ 7.

Defendant had produced some documents, e.g., SBB Incentive Plans 2013-2018, other critical documents had not been produced such as the earlier versions of the SBB Playbooks (Years 2013-2015), the SBB Job Descriptions (Years 2013-2016), and other documents subject to the parties' prior meeting and conferring, e.g., training documents. Plaintiffs' portion of the letter brief concluded by describing Plaintiffs' meet and confer efforts in the intervening period between the Court-ordered production date of January 29, 2019 and the March 21, 2019 submission of the Joint Letter Brief. (Dkt. 52, pp. 1-3.)

Defendant's portion of the letter brief began by listing what documents it had produced to Plaintiffs. It notably did not provide the number of actual pages produced which was minimal. Addressing the three categories of documents ordered by the Court, Defense counsel defended the validity of the Salesforce Data it produced and misrepresented what information the Salesforce system tracks or maintains. Counsel also misrepresented that the SBB Partnership Agreement was not in use during the statutory period nor was it contained in SBBs' personnel files. Notably, he did not say the document did not exist; rather that it would be too burdensome for Defendant to locate them. With respect to the last category regarding Defendant's expectations, Defense counsel described what documents that had been produced prior, claiming it was sufficient, as opposed to addressing why it had not produced the documents ordered by the Court. (Dkt. 52, pp. 3-5.)

**D. The Court's April 15, 2019 Discovery Order**

On April 15, 2019, the Court issued its Order Granting in Part Plaintiffs' Discovery Request. (Dkt. 53.) The Court in no uncertain terms stated, "Within seven days of this order, defendant Bank of America is ordered to produce the following documents to the extent they exist and have not already been produced:

> (1) All Salesforce Activity Reports for the entire putative class in a readable format similar to how Small Business Bankers and their supervisors view the information within the Salesforce system;
>
> (2) All Small Business Banker Partnership Agreements for the entire putative class, including, but not limited to, all Small Business Bankers / Financial Center Managers Checklists;
>
> (3) All documents that reflect Bank of America's expectations for hours and activities of the Small Business Banker position during the statutory period, including, but not limited to, un-redacted versions of the Small Business Banker Playbook from 2013 to 2018 and Small Business Banker Job Descriptions from 2013 to 2016;

(4) All documents originating from hyperlinks contained within the SBB Playbooks, including, but not limited, to those documents (originating from hyperlinks) that were highlighted by Plaintiffs in their December 21, 2018 meet and confer correspondence to Defendant; and

(5) All trainings provided to Small Business Bankers during the statutory period, including, but not limited to, trainings highlighted by Plaintiffs in their December 21, 2018 meet and confer correspondence to Defendant.

(Dkt. 52, pp. 1-2.)

**E. Defendant's Failure to Comply With The Court's April 15, 2019 Discovery Order**

On April 22, 2019, Defendant produced a single Excel spreadsheet of Salesforce Data and no other documents. Defense counsel did not send any correspondence with the production explaining why Defendant had not complied with the Court's order. Plaintiffs' counsel's initial review of the Excel spreadsheet containing the Salesforce data showed substantially more information than the previous Salesforce data produced pursuant to the January 8, 2019 order.[8]

With Plaintiffs' Motion for Class Certification due in one week, Plaintiffs submitted a supplemental letter to the Court addressing Defendant's failure to obey the Court's order. In particular, the letter addressed Defendant's suppression of the informative Salesforce data, Defendant's failure to produce documents responsive to the other four categories of documents, and requested the Court impose evidentiary and monetary sanctions on Defendant.[9] (Dkt. 54.)

Upon further review of the Salesforce data by Plaintiffs' expert, it was discovered that Defendant's production did not comply with the Court's order to produce "All the Salesforce Activity Reports for the entire putative class." <u>Instead, Defendant only produced data for 19 putative class members, for the period of September 1, 2018 to April 3, 2019, amounting to less than 4% of the putative class and approximately eight months of a class period that extends back to March 2013.</u>[10] Upon realizing the full extent of Defendant's misconduct, Plaintiffs' counsel sent Defense counsel John Van Hook an email at 8:33 a.m. on April 25, 2019 requesting an explanation for his failure to abide by the Court's order by noon that day otherwise Plaintiffs would bring this

[8] Decl. of Wynne, ¶ 9.
[9] Decl. of Wynne, ¶ 10.
[10] Decl. of Wynne, ¶ 11.

matter to the Court's attention. Defense counsel did not respond.[11] Later that day, Plaintiffs filed a supplemental letter further informing the Court as to the full extent of Defendant's failure to obey its order and requesting evidentiary, monetary sanctions and grant of class certification to alleviate the extreme prejudice caused by Defendant's malfeasance.[12] (Dkt. 55.)

On April 30, 2019, the Court issued an order denying Plaintiffs' request for sanctions without prejudice to filing a noticed motion for sanctions to be heard alongside the motion for class certification. (Dkt. 56.)

### F. Defendant's Corporate Designee Establishes Defense Counsel Has Made Material Misrepresentations To the Court Regarding the Court-Ordered Documents and Data To Be Produced

On April 18, 2019, Plaintiffs' counsel took the deposition of Defendant's Fed. R. Civ. P. Rule 30(b)(6) corporate designee, Mike Amaral.[13] Mr. Amaral's testimony confirms that Defense counsel John Van Hook made numerous misrepresentations to the Court in Defendant's portion of the March 21, 2019 Discovery Letter Brief. (Dkt. 52.) Likewise, the Salesforce data produced to Plaintiffs on April 22, 2019 also establishes that Defense counsel misrepresented the Salesforce data to the Court. The chart below summarizes Defense counsel's misrepresentations with supporting evidence:

| Defense Counsel's Misrepresentations | Relevant Evidence |
|---|---|
| <u>Category 1</u>: Salesforce Data.<br>"There is no information maintained in the SalesForce system, however, reflecting how long a sales meeting or call lasted, the preparation or the travel time, *the location of the meeting, or other information that Plaintiffs might be seeking to show the nature and location of employees' work activities. While Defendant does not dispute that such information would be relevant, it does not exist in the Salesforce system."* (Dkt. 52, p. 4.) [Emphasis added] | Mr. Amaral testified that Salesforce indicates the location of the meeting (at the branch or the customer's place of business which is listed) as well as any notes entered by the SBB.[14]<br><br>The Salesforce Data produced to Plaintiffs on April 22, 2019 reflects the location of the "face-to-face" customer meetings (e.g., at the FC ("financial center") or SB ("small business")), including the customer's address, as well as notes of the SBB's activities.[15]<br><br>*As of the filing of this motion, Defendant has |

[11] Decl. of Wynne, ¶ 12.
[12] Decl. of Wynne, ¶ 13.
[13] Decl. of Wynne, ¶ 14.
[14] Decl. of Wynne, ¶ 14, Ex. 1, Amaral Depo. pp. 30:4-31:15.
[15] Decl. of Wynne, ¶ 15, Ex. 3, Salesforce Data Exemplars.

| | |
|---|---|
| | provided no supplemental production of Salesforce Data.[16] |
| Category 2: SBB Partnership Agreements and SBB & FCM Partnership Checklists.<br><br>"As explained to Plaintiffs' counsel, *Defendant has not used the 'SBB Partnership Agreement' for several years, if at all during the relevant period*." (Dkt. 52, pp. 4-5.) [emphasis added]<br><br>"Defendant has already produced the "SBB & FCM Partnership Checklist . . . ." (Dkt. 52, p. 5.) | Mr. Amaral testified that SBB Partnership Agreement was used within the class period from at least 2013[17] until approximately 2016 when it was replaced by the SBB/FCM Checklist. The Checklist was used until approximately two years ago.[18]<br><br>*Defendant has not produced any SBB Partnership Agreements or Checklists for putative class members.[19] |

### G. Documents That Defendant Has Failed To Produce Despite The Court's Discovery Order

Plaintiffs have summarized what documents they believe exist that remain outstanding following Defendant's April 22, 2019 production:

| Category of Documents | Outstanding Documents |
|---|---|
| Category 1: Salesforce records | Defendant has failed to produce *all* Salesforce data for the putative class. |
| Category 2: SBB Partnerships Agreements and SBB & FCM Partnership Checklists | Defendant has failed to produce any SBB Partnership Agreements and SBB & FCM Partnership Checklists for the putative class. |
| Category 3: Expectations of Hours and Activities | Defendant has failed to produce SBB Job Descriptions for the years of 2013-2016. |
| Category 4: Documents originating in hyperlinks contained in the SBB Playbooks | Defendant has failed to produce any documents originating from the hyperlinks contained in the SBB Playbooks. |
| Category 5: Training documents identified in Plaintiffs' December 21, 2018 meet and confer correspondence to Defendant | Defendant has failed to produce all the trainings identified in Plaintiffs' December 21, 2018 meet and confer correspondence. |

At no point has Defendant provided an explanation to the Court or Plaintiffs' counsel as to why it

[16] Decl. of Wynne, ¶ 16.
[17] Plaintiffs produced a copy of Laura Lopez's signed 2013 SBB Partnership Agreement as part of Plaintiffs' initial production of documents to Defendant. Ex. 2, 2013 SBB Partnership Agreement (LOPEZ00820).
[18] Decl. of Wynne, ¶ 14, Ex. 1, Amaral Depo., pp. 143:6-145:16, 161:12-165:10.
[19] Decl. of Wynne, ¶ 16.

has failed to produce any of the documents and data identified above.[20]

## III. ARGUMENT

### A. The Court Has Broad Discretion to Award Sanctions For Defendant's Bad Faith Refusal to Comply With The Court's Prior Discovery Orders

When a party fails to obey an order to provide or permit discovery, Federal Rule of Civil Procedure 37(b)(2)(A)(I) permits courts to issue an order "directing that matters embraced in the order or other designated facts be taken as established for the purposes of the action, as the prevailing party claims." *Id*. Additionally, [c]ourts are vested with inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Unigard Sec. Ins. V. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). Those inherent powers include "the broad discretion to make discovery and evidentiary rulings conductive to the conduct of a fair and orderly trial." *Id*.

The Court must find that the discovery violations were due to "willfulness, bad faith or fault of the party" in order to award sanctions. *Jang v. Sagicor Life Ins. Co.*, 2019 WL 699791 at *4 (C.D. Cal. Feb. 20, 2019) (citing *Commodity Futures Trading Commn v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 770-71 (9th Cir. 1995). Disobedient conduct not outside the control of the litigant is all that is required to demonstrate willfulness, bad faith or fault. *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948-49 (9th Cir. 1993). In evaluating the propriety of sanctions, the Court considers "all incidents of a party's misconduct." *Adriana Int'l Corp v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).

The Ninth Circuit has articulated a five-part test for evaluating whether a party's requested evidentiary sanctions are appropriate: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

### B. Evidentiary Sanctions Are Warranted Due to Defendant's Failure to Obey the Court's Discovery Orders

#### 1. The First Two Factors Weigh Heavily In Favor Of Evidentiary Sanctions

[20] Decl. of Wynne, ¶ 17.

The public has an interest in the expeditious resolution of this litigation. Discovery was well underway when this case was removed to the Northern District in early 2018. Plaintiffs have sought to efficiently and diligently obtain documents and data responsive to the written discovery it propounded to Defendant in August 2017. But for Defendant's discovery abuse, the Court would have resolved the issue of class certification by now. Indeed, this Court had to extend the class certification schedule at the January 8, 2019 CMC to accommodate Defendant's production of the records to Plaintiffs under the first discovery order.

The Court's need to manage its own docket also militates in favor of issuing evidentiary sanctions. Due to Defendant's discovery abuse, Plaintiffs' counsel has had to continually seek the Court's intervention by having to request assistance from Judge Kim, engage the Court to obtain first discovery order, submit a joint discovery letter brief to obtain the second discovery, and other supplemental letter briefs regarding Defendant's noncompliance. The evidentiary sanctions requested would lessen the need for the Court's intervention in the discovery phase and thereby relieve its docket.

Ultimately, Defendant's "[r]efusal to produce documents which clearly exist and failure to abide by this Court Order will prevent the expeditious resolution of litigation and hinders the Court's ability to move this case towards disposition." *Jang v. Sagicor Life Ins. Co., supra*, 2016 WL 699791 at *5. See *Carson Cheng v. AIM Sports, Inc.*, No. CV10-3814-PSG (PLAx), 2011 WL 13175663, at *11 (C.D. Cal. Aug. 23, 2011) (granting evidentiary sanctions). Thus, the first two factors weigh in favor of granting the requested evidentiary sanctions.

### 2. Plaintiffs Have Been Severely Prejudiced By Defendant's Misconduct

The third factor analyzing prejudice to the party seeking sanctions weighs heavily in favor of the Court granting evidentiary sanctions. Defendant's failure to obey the Court's discovery order materially affected Plaintiffs' preparation of their Motion for Class Certification. Plaintiffs were prejudiced in having to expend substantial time to bring Defendant's misconduct before the Court, obtain multiple discovery orders, and thereafter "police" Defendant's compliance, all the while preparing their motion for class certification.[21]

With respect to the Plaintiffs' evidence offered in support of its Motion for Class

[21] Decl. of Wynne, ¶ 19.

Certification, the extent of the prejudice is difficult to gauge because Plaintiffs must prove a negative. Plaintiffs have been improperly denied discovery that would have permitted an even more robust evidentiary showing to the Court. The quality of Plaintiffs' motion should not be credited to Defendant's compliance in discovery, but to Plaintiffs' counsel's skill, expertise and experience.

Most glaringly, Defendant has still not produced to Plaintiffs the documents and data ordered by the Court. Plaintiffs still seek this information in their preparation for trial in this case. Thus, Plaintiffs are more prejudiced each passing day by Defendant's suppression of evidence it knows exists but has not been produced by Defendant despite the Court's orders.[22] See *Jang, supra*, at *5.

To provide the Court more context as to why the suppressed documents are so prejudicial, Defendant's discovery abuse attempts to compromise Plaintiffs' theory as to the merits and class certification. Plaintiffs' theory is that the SBB position has been misclassified as exempt under the outside sales exemption. To qualify for the outside salesperson exemption, the employee must spend more than 50% of their time outside of the employer's places of business. *Walsh v. IKON Office Solutions, Inc.*, 148 Cal.App.4th 1440 (2007). The common question presented at the class certification stage is whether Defendant's expectation for SBBs to be primarily outside is realistic or not. The documents and data that Defendant has suppressed, to-date, is critically important evidence to establishing Plaintiffs' theory that Defendant's expectations were unrealistic and the SBB position is, in fact, an inside sales job.

For the Court's convenience, Plaintiffs' chart below summarizes the importance of each category of suppressed documents:

| **Category of Documents** | **Importance** |
|---|---|
| Category 1: Salesforce records | Salesforce records are contemporaneous records which reflect the location of customer face-to-face meetings, including distinguishing between meetings conducted *inside* the financial center and other meetings at the customer's place of business. This is critical to establishing Plaintiffs' theory that the SBBs were primarily inside and Defendant thereby cannot meet the test of the exemption. |

[22] Decl. of Wynne, ¶ 20.

| | |
|---|---|
| Category 2: SBB Partnerships Agreements and SBB & FCM Partnership Checklists | The SBB Partnership Agreement and SBB & FC Partnership Checklist documents reflect Defendant's expectations for the position and direct the SBB to spend 8 hours minimum per week in each of the financial centers they service. This is critical to establishing that Defendant's alleged expectation to be outside was unrealistic. |
| Category 3: Expectations of Hours and Activities | Job Descriptions within the statutory period, for the years 2013-2016, are highly relevant documents as to Defendant's expectations for the SBB position and whether they were realistic. Job Descriptions for 2017 and 2018, which have been produced, reflect Defendant's alleged expectation that SBBs should spend 50% to 80% of their time outside. At deposition, Defendant's PMK was completely unaware of this alleged expectation. |
| Category 4: Documents originating in hyperlinks contained in the SBB Playbooks | Plaintiffs assert these documents are highly relevant evidence reflecting Defendant's expectations for the SBB position, including the activities SBBs are expected to perform. |
| Category 5: Training documents identified in Plaintiffs' December 21, 2018 meet and confer correspondence to Defendant | Plaintiffs assert these documents are highly relevant evidence reflecting Defendant's expectations for the SBB position, as it relates to both the outside sales and administrative exemptions, as well as proving commonality at class certification. |

**3. The Public Policy Interest of Disposing of Cases On the Merits Weighs in Favor of Evidentiary Sanctions**

"The fourth factor – resolution of cases on their merits – always weights against default." *Jang, supra*, at *5. Plaintiffs are not seeking terminating sanctions against Defendant at this time. However, it is undeniable that Defendant "[h]as been less than forthcoming with [the] production of documents in this case, to the detriment of [Plaintiffs], and at the risk of 'interfering with the rightful decision of the case.'" *Jang, supra*, at *5 (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d

1406, 1412 (9th Cir. 1990).) Thus, the fourth factor weighs in favor of issuing evidentiary sanctions against Defendant.

**4. There Are No Lesser Sanctions Available To Ameliorate the Prejudice Caused By Defendant's Discovery Abuse.**

As stated above, Plaintiffs are seeking four separate evidentiary sanctions. Any lesser evidentiary sanctions than those requested would be, in essence, no sanction at all on Defendant and inevitably cause Plaintiffs more prejudice. *See Carson Cheng, supra,* 2011 WL 13175663 at *11 (finding evidentiary sanctions were the appropriate next step consistent with the court's "progressive discipline approach.") First and foremost, Plaintiffs are requesting Defendant produce the documents and data ordered by the Court in the second discovery order and provide the Court a status update that it has fully complied with the order. Plaintiffs will address the remaining three requested evidentiary sanctions below.

**a. Discovery Cut-Off**

Plaintiffs' second requested evidentiary sanction seeks to preclude Defendant from introducing new evidence or relying on evidence that was not produced to Plaintiffs by April 22, 2019, the date of production ordered by the Court's April 15, 2019 order. (Dkt. 53.) It would be highly prejudicial to Plaintiffs if Defendant was able to rely on evidence that it had suppressed. Given Defense counsel's misconduct throughout the discovery process, Plaintiffs' counsel cannot be entirely certain as to what discoverable material has not been produced. For example, Plaintiffs *know* Defendant has suppressed the Salesforce information. Conversely, Plaintiffs *do not know* if Defendant has suppressed declarations it has obtained from SBBs. To-date, no declarations obtained by Defendants have been produced despite Plaintiffs' making a valid discovery request via Plaintiffs' First Set of Requests for Production, RFP #20 in August 2017.[23] Thus, the Court excluding all evidence that has not (but should have been) produced to Plaintiffs is the surest way to alleviate prejudice to Plaintiffs and address Defendant's discovery abuse.

**b. Adverse Inference**

Plaintiffs' third requested sanction seeks to have the Court impose adverse inferences as to any evidence Defendant has not produced pursuant to the Court's discovery orders. See, e.g., Cal.

[23] Decl. of Wynne, ¶ 18.

Evid. Code §§ 412, 413. As an example, regarding the SBB Job Descriptions for 2013-2016, the Court should draw the inference that at a minimum the withheld documents do not support Defendant's position and quite possible provide evidence contrary to Defendant's position. In other words, the Court should infer, at a minimum, that the withheld Job Descriptions are silent on the alleged expectation for the SBBs to be outside most of the time and, quite possibly, the withheld Job Descriptions state affirmatively that the SBB position is an inside sales position.

**c. Salesforce Data**

Plaintiffs' fourth requested evidentiary sanction addresses Defendant's suppression of the Salesforce data. Defendant has suppressed the Salesforce data despite the Court ordering the data for the entire putative class be produced to Plaintiffs on two separate occasions. As set forth in Plaintiffs' Motion for Class Certification, the sampling of Salesforce data produced thus far is damaging to Defendant's efforts to defeat class certification and the case on the merits. Defendant's refusal to produce all the Salesforce data can reasonably be viewed as an attempt to limit the damage. It would be highly prejudicial to permit Defendant to argue that the data it did produce was somehow not representative.

**C. The Court Should Impose Severe Monetary Sanctions On Defendant and its Counsel For Failure To Obey The Court's Discovery Orders.**

Reasonable expenses, including attorneys' fees, caused by failure to comply with discovery orders may be awarded against the disobedient parties and/or their attorneys unless they demonstrate that noncompliance was substantially justified or an award is otherwise unjust. Fed.R.Civ.P. 37(b)(2)(C); see *Lew v. Kona Hosp.*, 754 F2d 1420, 1427 (9th Cir. 1985). To be recoverable, the expenses must have resulted from failure to obey a court order rather than efforts to obtain the order in the first place. Moreover, there must be evidence of the reasonableness of the rates claimed or their relation to the prevailing rates in the community. *Toth v. Trans World Airlines, Inc.*, 862 F2d 1381, 1386 (9th Cir. 1988); see also *Richmark Corp. v. Timber Falling Consultants*, 959 F2d 1468, 1482 (9th Cir. 1992) (includes fees for preparing motion to compel).

Defendant's misconduct in failing to obey *two discovery orders* is well-documented above. Plaintiffs are requesting the court award the amount of $44,490.00 to Plaintiffs as a sanction against Defendant for its failure to obey the Court's orders and to deter future abuse in discovery.[24] This

[24] Decl. of Wynne, ¶ 21.

amount represents the reasonable attorneys' fees incurred by Plaintiffs (or will be incurred by Plaintiffs) from January 28, 2019, the date Plaintiffs began seeking Defendant's compliance with the Court's first discovery order, to the resolution of the instant motion to sanctions.[25]

During this period, Plaintiffs have expended attorneys' fees in reviewing Defendant's deficient discovery productions and conferring internally as to further handling ("Review of Productions"); corresponding via formal letter and/or by email with Defense counsel ("Meet and Conferring"); conducting legal research ("Legal Research"); preparing a joint discovery letter brief ("Motion to Compel"); preparing correspondence notifying the Court of Defendant's non-compliance with its orders ("Court Submissions"); and the instant motion for sanctions ("Motion for Sanctions"). Plaintiffs have provided a breakdown of Plaintiffs' counsels' attorney time expended for each of the categories above:

| **Attorney Tasks** | **Attorney Hours** |
|---|---|
| Review of Productions | 12.8 |
| Meeting and Conferring | 12.0 |
| Legal Research | 3.8 |
| Motion to Compel | 10.7 |
| Court Submissions | 6.1 |
| Motion for Sanctions | 26.7 [26] |
| TOTAL: | 72.1 [27] |

(Decl. of Wynne, ¶ 23; Decl. of Nemiroff, ¶ 2.)

Plaintiffs' counsel is highly experienced in complex litigation related to financial services employees.[28] Plaintiffs' counsel's hourly rates are $820 and $525 as recently confirmed by Northern District Judge Edward M. Chen as recently as March 13, 2019 in a class action settlement involving this very *Defendant*.[29] The rates charged are in line with the prevailing rates in the wage

[25] Decl. of Wynne, ¶ 22.
[26] Plaintiffs have included an extra five (5) hours to this category which is the conservative assessment of the attorney time required to prepare a Reply to Defendant's Opposition and argue the motion at the June 19, 2019 hearing. Decl. of Wynne, ¶ 23, fn 1.
[27] Plaintiffs' counsel keeps contemporaneous records on the attorney time billed in this case and will provide the Court detailed records of its billings for *in camera* inspection upon request. Decl. of Wynne, ¶ 23, fn. 2.
[28] Decl. of Wynne, ¶¶ 21-33; Decl. of Nemiroff, ¶¶ 3-5.
[29] Decl. of Wynne, ¶ 34; Decl. of Nemiroff, ¶ 6.

and hour class action legal community.[30]

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court impose the evidentiary and monetary sanctions set forth in the Proposed Order against Defendant and/or its legal counsel for failure to obey the Court's discovery orders.

DATED: May 8, 2019

WYNNE LAW FIRM

By: */s/ Edward J. Wynne*
EDWARD J. WYNNE
Attorney for Plaintiffs
Laura Lopez and Samuel Willis

[30] Id.