**McGuireWoods LLP**
Michael D. Mandel (SBN 216934)
mmandel@mcguirewoods.com
John A. Van Hook (SBN 205067)
jvanhook@mcguirewoods.com
Lindsay L. Ryan (SBN 258130)
lryan@mcguirewoods.com
Ashley R. Li (SBN 317305)
ali@mcguirewoods.com
1800 Century Park East, 8th Fl.
Los Angeles, CA 90067-1501
Telephone: (310) 315-8200
Facsimile:  (310) 315-8210

Sylvia J. Kim (SBN 258363)
Email:  skim@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone:  415.844.9944
Facsimile:  415.844.9922

Attorneys for Defendant
BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA LOPEZ, SAMUEL WILLIS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 18-cv-02346-VC<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>*Filed Concurrently Herewith***:**<br>• **DECLARATION OF JOHN A. VAN HOOK**<br>• **DECLARATION OF BARRY DONNELLY**<br>• **APPENDIX OF EVIDENCE**<br>• **[PROPOSED] ORDER**<br><br>Date:        June 19, 2019<br>Time:        10:00 a.m.<br>Courtroom:  2 – 17th Floor<br>Judge:       Hon. Vince Chhabria |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ............................................................................................... 1

II. STATEMENT OF THE CASE ........................................................................... 2

    A. THE BANK'S DOCUMENT PRODUCTIONS ................................................. 2

    B. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND FOR SANCTIONS ................. 2

III. PLAINTIFFS' MOTION FOR SANCTIONS SHOULD BE DENIED ............................. 3

    A. APPLICABLE LEGAL STANDARDS .............................................................. 3

    B. SANCTIONS ARE NOT WARRANTED BECAUSE THE BANK HAS UNDERTAKEN GOOD FAITH, REASONABLE EFFORTS TO COMPLY WITH THIS COURT'S ORDER .................................................................................................... 3

        1. Category 1 – SalesForce Data .................................................... 4

        2. Category 2 – SBB Partnership Agreements ................................. 4

        3. Category 3 – Job Descriptions .................................................... 6

        4. Category  4 – Documents Originating From Hyperlinks Within the SBB Playbooks ......................................................................... 6

        5. Category 5 – Training Documents Provided To SBBs ................. 6

    C. PLAINTIFFS HAVE NOT MET THEIR BURDEN THAT THE UNDULY HARSH AND DRASTIC REMEDY OF EVIDENTIARY SANCTIONS IS WARRANTED ........................... 7

    D. PLAINTIFFS FAIL TO SHOW BAD FAITH OR GROSS NEGLIGENCE SUFFICIENT TO WARRANT ADVERSE INFERENCE SANCTIONS .................................................. 11

    E. MONETARY SANCTIONS WOULD BE UNJUST ......................................... 13

IV. CONCLUSION .................................................................................................. 15

CERTIFICATE OF SERVICE.......................................................................................... 16

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adolph Coors Co. v. Movement against Racism & Klan*,
  777 F.2d 1538 (11th Cir. 1985).................................................................................8

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. C 11-1846 LHK PSG, 2012 WL 5451411 (N.D. Cal. Nov. 7, 2012) ..........................14, 15

*Chavez v. Blue Sky Nat. Beverage Co.*,
  No. 06-06609 JSW JSC, 2011 WL 4830997 (N.D. Cal. Oct. 12, 2011)....................................13

*Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*,
  67 F.3d 766 (9th Cir. 1995)....................................................................................3

*Foster v. Tourtellotte*,
  704 F.2d 1109 (9th Cir. 1983)..................................................................................3

*Garcia v. City of Santa Clara*,
  No. 10-CV-02424-SI, 2017 WL 1398263 (N.D. Cal. Apr. 19, 2017) .....................................14

*Hamilton v. Signature Flight Support Corp.*,
  No. C 06-0490 CW (MEJ), 2005 WL 3481423 (N.D. Cal. Dec. 20, 2005).............................13

*Hullinger v. Anand*,
  No. CV 15-07185 SJO, 2016 WL 7444625 (C.D. Cal. Oct. 12, 2016)......................................3

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
  No. 14-CV-00876-RS(JSC), 2018 WL 1569762 (N.D. Cal. Mar. 30, 2018).............................8

*Karnazes v. Cty. of San Mateo*,
  No. C 09-0767 MMC (MEJ), 2010 WL 2672003 (N.D. Cal. July 2, 2010) .............................11

*Klund v. High Tech. Solutions, Inc.*,
  No. 05CV0565JAH, 2006 WL 549385 (S.D. Cal. Feb. 23, 2006).........................................8, 9

*Larsen v. Coldwell Banker Real Estate Corp.*,
  No. SACV 10-00401-AG, 2012 WL 359466 (C.D. Cal. Feb. 2, 2012) .....................................7

*Lewis v. Ryan*,
  261 F.R.D. 513 (S.D. Cal. 2009)...............................................................................7

*Matrix Motor Co. Inc. v. Toyota Motor Sales, USA, Inc.*,
  No. SACV03601CJCJTLX, 2003 WL 22466218 (C.D. Cal. May 8, 2003).............................15

*MGA Entm't, Inc. v. Nat'l Prod. Ltd.*,
  No. CV 10–07083 JAK (SSx), 2011 WL 4550287 (C.D. Cal. Oct. 3, 2011) .............................6

18-cv-02346-VC

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

*Mixt Greens v. Sprout Café*,
   No. C-08-5175 EMC, 2010 WL 2555753 (N.D. Cal. June 21, 2010) .......................................13

*Nat'l Hockey League v. Metropolitan Hockey Club*,
   427 U.S. 639 (1976) ..................................................................................................................8

*Pierce v. Underwood*,
   487 U.S. 552 (1988) ..................................................................................................................3

*QS Wholesale, Inc. v. Rox Volleyball, Inc.*,
   No. SACV 13-0512, 2014 WL 12577091 (C.D. Cal. Nov. 17, 2014) .........................................3

*Reilly v. Natwest Markets Group, Inc.*
   181 F.3d 253 (2nd Cir. 1999) ..................................................................................................11

*Rooney v. Sierra Pac. Windows*,
   No. 10-CV-00905-LHK, 2011 WL 2149097 (N.D. Cal. June 1, 2011)..............................7, 13

*Segan LLC v. Zynga Inc*,
   131 F. Supp. 3d 956 (N.D. Cal. 2015) .....................................................................................3

*Societe Intern'l Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*,
   357 U.S. 197 (1958) ...............................................................................................................7, 8

*Swallow v. Toll Brothers*,
   No. C-08-02311 JCS, 2009 WL 513486 (N.D. Cal. Mar. 2, 2009) .........................................15

*Thompson v. Hous. Auth. of City of Los Angeles*,
   782 F.2d 829 (9th Cir. 1986)....................................................................................................8

*Toth v. Trans World Airlines, Inc.*,
   863 F.2d 1381 (9th Cir. 1988)................................................................................................14

*True Health Chiropractic Inc v. McKesson Corp.*,
   No. 13CV02219HSGDMR, 2015 WL 5341592 (N.D. Cal. Sept. 12, 2015) .............................8

*Unigard Sec. Ins. Co. v. Lakewood Engin & Mfg. Corp.*,
   982 F.2d 363 (9th Cir. 1992)....................................................................................................3

*United States v. N. E. Med. Servs.*,
   No. 10-CV-01904-CW (JCS), 2014 WL 7208627 (N.D. Cal. Dec. 17, 2014) ..........................9

*Uschold v. Carriage Servs., Inc.*,
   No. 17-cv-04424-JSW (EDL), 2019 WL 1975433 (N.D. Cal. Mar. 15, 2019) .......................15

*Wanderer v. Johnston*,
   910 F.2d 652 (9th Cir. 1990)................................................................................................8, 9

*Wyle v. R.J. Reynolds Industries, Inc.*,
   709 F.2d 585 (9th Cir. 1983)....................................................................................................9

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001)......................................................................................7

**FEDERAL RULES**

Federal Rule of Civil Procedure

30(b)(6)........................................................................................................................5

37..................................................................................................................1, 2, 3, 7, 8, 9

37(a).............................................................................................................................15

37(b)(2)(A)....................................................................................................................7

37(b)(2)(A)(i)............................................................................................................1, 2

37(b)(2)(C)....................................................................................................................7

**DEFENDANT MANPOWER INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

## I.   INTRODUCTION

In this case involving Small Business Bankers ("SBBs") in the State of California, Bank of America, N.A. ("Bank of America" or "Defendant") has produced thousands of pages of documents and millions of lines of data to Plaintiffs regarding, among other things, the role of the SBB, Defendant's expectations regarding their work duties, and how much of their time they devote to outside sales activities, which goes to the central issue before the Court in Plaintiffs' pending Motion for Class Certification – that is, can the issue of whether each putative class member satisfied the outside salesperson exemption be resolved through class-wide, common proof.  One week after filing their Motion for Class Certification, Plaintiffs filed their Motion for Sanctions alleging that the Bank has violated the Court's April 15, 2019, Discovery Order, by failing to produce:

1.   Salesforce records for the putative class;
2.   SBB Partnership Agreements and SBB Partnership Checklists for the putative class;
3.   SBB Job Descriptions for 2013 through 2016;
4.   Documents originating from the hyperlinks contained in the SBB Playbooks; and
5.   All trainings identified in their meet and confer correspondence.

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(i) ("Rule 37"), Plaintiffs seek sanctions, including evidentiary, adverse inference, and monetary sanctions.  *See* Notice of Motion (Dkt #61) at 1:1-4.  Defendant respectfully requests that the Court deny Plaintiffs' motion and requested relief.

As demonstrated below, Defendant has complied and continues its efforts to comply in good faith with the Court's April 15 Order.  For example, Defendant has produced the SalesForce data sought by Plaintiffs, it has gone to significant lengths to try and locate and collect SBB Partnership Agreements and Checklists, which Plaintiffs know Defendant does not collect or retain in any centralized database.  Defendant has been unable to find job descriptions for 2015 and 2016 (having already produced job descriptions for 2012, 2013, 2014, 2017, and 2018).  And, Defendant is attempting to locate the remaining documents identified by Plaintiffs, including efforts to supplement the many training documents it already has produced.

Furthermore, Plaintiffs cannot meet their burden of establishing the basis for the harsh and extraordinary evidentiary sanctions they seek.  They rely on an inapplicable standard, cannot show the requisite prejudice to justify such harsh sanctions under that standard, and themselves identify

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

lesser sanctions.  These factors cut against their demand for evidentiary sanctions, as does the public policy in favor of disposition on the merits and a full evidentiary record.  Plaintiffs also fail to show the requisite bad faith or gross negligence necessary to warrant their request for an adverse inference sanction.  They attempt to manufacture bad faith by alleging that Defendant's counsel made "numerous misrepresentations" to the Court, but their arguments are based on, at best, a mistaken reading of the record.  Finally, Plaintiffs are not entitled to a monetary sanction.  Defendant has not intentionally violated the Court's Order.  Plaintiffs seek reimbursement for tasks unrelated to Defendant's alleged violation of the Court's April 15 Order, and Plaintiffs fail to support their rate requests with any evidence outside their own declarations.

## II.     STATEMENT OF THE CASE

### A.     THE BANK'S DOCUMENT PRODUCTIONS

The Bank has provided an extraordinary amount of documents and data to Plaintiffs since the case's began.  The Bank's production comprises thousands of pages of documents and millions of lines of data.  *See* Declaration of John A. Van Hook (hereinafter "Van Hook Decl."), ¶ 2.

### B.     PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND FOR SANCTIONS

On May 1, 2019, Plaintiffs filed their Motion for Class Certification.  *See* Motion for Class Certification (Dkt. #58).  On May 8, 2019, Plaintiffs filed their Motion for Sanctions alleging that the Bank has violated the Court's April 15, 2019, Order.  *See* Motion for Sanctions (Dkt. #61). Plaintiffs identify in their Motion the following documents which they describe as outstanding following Defendant's April 22, 2019, production:

1.   Salesforce records for the putative class;
2.   SBB Partnership Agreements and SBB Partnership Checklists for the putative class;
3.   SBB Job Descriptions for 2013 through 2016;
4.   Documents originating from the hyperlinks contained in the SBB Playbooks; and
5.   All trainings identified in their meet and confer correspondence.

Citing Federal Rule of Civil Procedure 37(b)(2)(A)(i) ("Rule 37"), Plaintiffs request that the Court (1) order the Bank to produce the documents summarized in their motion and provide the Court with a status update as to its compliance when the records are produced; (2) preclude the Bank from introducing or relying on any evidence not previously produced to Plaintiffs prior to April 22, 2019;

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

(3) draw an inference that all withheld documents are detrimental to the Bank's position, (4) estop the Bank from arguing that the SalesForce data produced to Plaintiffs on April 22, 2019, is not representative of the entire putative class; and (5) award Plaintiffs monetary sanctions of $44,490.00.  *See* Notice of Motion (Dkt #61) at 1:1-4.   As demonstrated below, the Court should deny Plaintiffs' motion and requested relief.

### III.    PLAINTIFFS' MOTION FOR SANCTIONS SHOULD BE DENIED

#### A.    APPLICABLE LEGAL STANDARDS

Rule 37 provides that a court may sanction a party for failure to comply with a court order. *Unigard Sec. Ins. Co. v. Lakewood Engin & Mfg. Corp.*, 982 F.2d 363, 367 (9th Cir. 1992).  But, the Court must find that the alleged discovery violations were due to willfulness, bad faith, or fault of the party in order to award sanctions, *see Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 770-71 (9th Cir. 1995); and an award of attorneys' fees is not appropriate if the alleged non-compliance was substantially justified or other circumstances make an award of expenses unjust.  *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (equating the "substantially justified" standard applied to discovery-related actions to conduct for which sanctions are sought under Rule 37); *Foster v. Tourtellotte*, 704 F.2d 1109, 1112 (9th Cir. 1983) (holding that "reasonableness is the correct test for determining" whether a position is substantially justified); *QS Wholesale, Inc. v. Rox Volleyball, Inc.*, No. SACV 13-0512 AG (JPRx), 2014 WL 12577091 at *1 (C.D. Cal. Nov. 17, 2014) (recognizing that "[discovery conduct is substantially justified if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action") (internal quotation marks and citations omitted).[1]

#### B.    SANCTIONS ARE NOT WARRANTED BECAUSE THE BANK HAS UNDERTAKEN GOOD FAITH, REASONABLE EFFORTS TO COMPLY WITH THIS COURT'S ORDER

Contrary to Plaintiffs' contention, the Bank has complied and continues to comply in good faith with this Court's April 15, 2019, Order.  *See Segan LLC v. Zynga Inc*, 131 F. Supp. 3d 956, 964 (N.D. Cal. 2015) (Chhabria, J.) (recognizing that "[t]he apparent absence of bad faith is a factor

---

[1] *See also Hullinger v. Anand*, No. CV 15-07185 SJO (FFMx), 2016 WL 7444625, *3 (C.D. Cal. Oct. 12, 2016) (declining to award sanctions where reasonable minds could differ).

courts can and should consider when deciding how much to sanction attorneys").

### 1. Category 1 – SalesForce Data

As to the SalesForce data, the Bank produced all SalesForce Activity Reports for the putative class in a readable format on January 29, 2019. *See* Van Hook Decl., ¶ 5. This production included more than ***2.3 million lines of data***, showing each SalesForce entry by the roughly 500 putative class members over a period of more than five years. *Id.* The data included fields containing the SBB's identification number, the date of the sales activity, and whether the sales activity was "face to face" or by phone. *Id.* Thus, by the time the Court entered its April 15 Order, the Bank had already produced all of the SalesForce data that it believed was relevant to Plaintiffs' motion for class certification and reasonably believed that it had fully complied with the Order regarding the SalesForce data. *Id.* ¶ 5.

Plaintiffs disagreed and, in response, the Bank obtained a sample of data for nineteen individuals in the putative class that included all fields of data contained in the SalesForce system. This data included additional fields containing information such as the client's name, the outcome of the call (*i.e.*, whether there was a sale, if the prospective client was interested, *etc*.), and comments from the SBB, none of which are relevant to the issue of whether the SBBs spent over half of their time on outside sales activities. *Id.* ¶ 9.

This additional data set also included a field in which the SBB could identify whether the face-to-face meeting with the client occurred in a financial center (FC) or at the client's place of business (SB). *Id.* This field did not exist in the SalesForce system until January 2018, *see* Declaration of Barry Donnelly (hereinafter "Donnelly Decl."), ¶ 4, and the entries, which the SBB have to enter manually, do not include a specific address at which the meeting took place, how long it took the SBB to travel to and from the meeting, or the tasks the SBB performed preparing for the meeting. The Bank promptly produced this additional sampling data on April 22, 2019. Van Hook Decl., ¶ 9. The Bank then collected the same data for the entire putative class for the operative class period and produced that data to Plaintiffs on May 17, 2019. *Id.* ¶ 10.

### 2. Category 2 – SBB Partnership Agreements

As Defendant's Rule 30(b)(6) witness testified, SBB Partnership Agreements were in use

from 2013 until 2016, when they were replaced by an SBB Partnership Checklist, which was used for approximately two years.  *See* Van Hook Decl., ¶ 6, Exh. 2, Amaral Depo. at 143:6-145:16, 161:12-165:10.  But, it is undisputed that these agreements were not used to manage SBBs, were not collected or retained in any centralized database, and, they are not included in the SBBs' personnel files.  *See* Van Hook Decl., ¶ 3.  These documents, if they exist at all, are in the possession of the putative class members, who fill them out, or are in the possession of the Financial Center Managers ("FCMs") to whom the SBB chose to give the document.  *Id.*  In fact, the Bank's counsel only first became aware of the existence of such agreements when Plaintiffs produced one in discovery that Plaintiff Lopez (then known as Perez) had completed.  *See id.* ¶ 3, Exh. 1.  Notably, despite having a putative class list for months and actively surveying the putative class in support of their Motion for Class Certification, Plaintiffs have not produced any SBB Partnership Agreements or Checklists from any putative class members.  *Id.* ¶ 4.

Moreover, there is no dispute regarding the contents of the SBB Partnership Agreement or the SBB Checklist.  As shown in the SBB Partnership Agreement produced by Plaintiff Lopez, the document simply confirms that the SBB intended to visit a particular financial center on a particular day of the week, and the SBB handwrote the day of the week onto the template.  *Id.* ¶ 3, Exh. 1.  The day of the week and the name of the banking (or financial) center are the only things that will vary from SBB to SBB.  *Id.*  Ironically, Plaintiffs' insistence that Defendant produce Partnership Agreements and Checklists from each and every SBB belies their contention that this matter is amenable to class proof and thus class certification.  This individualized discovery, SBB-by-SBB, upon which Plaintiffs insist demonstrates why this matter is not amenable to class treatment because they tacitly admit that the class certification (and ultimate liability) question must be examined on an individual-by-individual, SBB-by-SBB basis.

Notwithstanding the foregoing, and despite not having ready access to these documents in any centralized database, in a good faith effort to comply, the Bank has contacted all SBB Managers and FCMs in California asking them to submit any SBB Partnership Agreements or Checklists that they may have in their possession, or to confirm that they have no such documents in their possession.  Van Hook Decl. ¶ 11.  More than 1,650 e-mails were sent; to date 592 have responded

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

that they do not have any such documents, and 2 have indicated that they do have such documents in their possession.  Defendant will collect and produce these documents to Plaintiff.

### 3.      Category 3 – Job Descriptions

Plaintiffs assert that Defendant has failed to produce job descriptions for the years 2013-2016.  *See* Dkt. #61 at 8:16-18.  This is incorrect.  Defendants have produced job descriptions for 2013 and 2014, and also for 2012, 2017, and 2018.  Bank of America has searched for, but has been unable to locate job descriptions for 2015 and 2016.  Van Hook Decl. ¶ 12.

### 4.      Category 4 – Documents Originating From Hyperlinks Within the SBB Playbooks

Plaintiffs refer to several documents which appear to be hyperlinked to the SBB Playbooks. These documents include documents with the title "Small Business Credit Pricing Exceptions," "Pre-Call Planning Toolkit," and documents to help an SBB sustain his or her credit pipeline. Although, it is not clear how these documents relate to the substantive issue at the heart of Plaintiffs' Certification Motion – that is, evidence regarding how long SBBs spend in outside sales activities – Defendant is collecting and will produce these documents as promptly as possible.

### 5.      Category 5 – Training Documents Provided To SBBs

The Bank has produced all training documents that are relevant specifically to the SBB position or the claims and defenses in this action.  Van Hook Decl. ¶ 13.  The Bank believes that it has collected and produced all relevant training documents for SBBs, but, it is searching for additional documents and will produce them promptly should they be located.  *Id.*  Despite the foregoing, and Defendant's good faith efforts to comply with its discovery obligations, Plaintiffs allege without justification or evidence that Defendant has intentionally withheld documents from production and suppressed evidence.  But, Plaintiffs' statements in their motion alleging that Defendant intentionally withheld documents are based on their own speculation and are unavailing. *See, e.g.*, *MGA Entm't, Inc. v. Nat'l Prod. Ltd.*, No. CV 10–07083 JAK (SSx), 2011 WL 4550287, *2 (C.D. Cal. Oct. 3, 2011) (finding that the plaintiffs' statements alleging that the defendants were withholding documents were based only on speculation and lacked conclusive proof that responsive documents were actually being withheld).

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

In *Larsen v. Coldwell Banker Real Estate Corp.*, No. SACV 10-00401-AG, 2012 WL 359466, at *1 (C.D. Cal. Feb. 2, 2012), the plaintiffs filed a motion compelling the production of the defendants' electronically stored information ("ESI"), alleging that the defendants failed to comply with the court's order compelling production of ESI and requesting sanctions as a result of the defendants' alleged failure to comply.  In considering whether the plaintiffs met their burden of showing that the defendants' preservation and production of ESI was inadequate, the court reasoned that "[t]he few isolated examples cited by Plaintiffs (out of a document production of approximately 9,000 pages) fail to demonstrate that Defendants have not reasonably and in good faith produced the documents required by this Court's October 25, 2011 Order." *Id.* at *7.  As such, the court held that the plaintiffs did not meet their burden of showing that the defendants' preservation and production of ESI was inadequate.  *Id.*

Similarly, like the defendants in *Larsen*, Defendant here has worked in good faith to comply with this Court's Order.  Based on the Bank's production of thousands of documents thus far, its continuing efforts to disclose discoverable information, and the proportionality concerns involved, sanctions are not warranted.  *See Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 211 (1958).

## C.   PLAINTIFFS HAVE NOT MET THEIR BURDEN THAT THE UNDULY HARSH AND DRASTIC REMEDY OF EVIDENTIARY SANCTIONS IS WARRANTED

Rule 37 sanctions are not mandatory.  Rather, Rule 37(b)(2)(A) and (C) provide authority for a court to impose sanctions for violation of a Court's discovery order unless the failure was substantially justified or other circumstances make a sanction unjust.  *See Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001); *see also Rooney v. Sierra Pac. Windows*, No. 10-CV-00905-LHK, 2011 WL 2149097, at *3 (N.D. Cal. June 1, 2011) (Koh, J.) (recognizing that "[e]videntiary preclusion is a harsh sanction that generally is not imposed where the failure to provide discovery was either substantially justified or harmless"); *Lewis v. Ryan,* 261 F.R.D. 513, 522 (S.D. Cal. 2009) (same).  Preclusion of evidence "is among the most severe" that a court may select when applying Rule 37.  *Klund v. High Tech. Solutions, Inc.*, No. 05CV0565JAH, 2006 WL 549385, at *6 (S.D. Cal. Feb. 23, 2006).  Accordingly, the preclusion sanctions which

Plaintiffs request here should be used sparingly (if at all) and only in limited circumstances where a party's failure to comply with a court order was done willfully or in bad faith. *See, e.g., id.* (noting that "[n]egligent conduct is insufficient to impose exclusionary sanctions; a showing of bad faith is required"); *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.*, 357 U.S. at 212 (refusing to award sanctions where the opposing party did not act in bad faith). This is because the purpose of Rule 37 sanctions based on a failure to comply with a discovery order is to encourage adherence to discovery procedures, not to unnecessarily punish or circumvent disposition on the merits. *Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976) (noting that the primary purpose of Rule 37 sanctions is to deter future abuse of discovery). Sanctions are imposed to "punish those guilty of 'willful bad faith and callous disregard of court directives.'" *Adolph Coors Co. v. Movement against Racism & Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985). Those factors do not exist here.

As a threshold matter, Plaintiffs rely here on an inapplicable five-part test. The test they articulate, as set forth in *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990),[2] is the test a court may consider in determining whether dismissal or default is appropriate under Rule 37, and Plaintiffs here expressly state that they are not asking for "terminating sanctions." Dkt. 61, p. 12. Courts have been have been reluctant to apply this five-factor test when faced with a request for evidentiary sanctions, and it is inapplicable here. *Cf. Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (applying the five-part test and explaining that "because dismissal is such a severe remedy, we have allowed its imposition in these circumstances only"); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS(JSC), 2018 WL 1569762, at *2 (N.D. Cal. Mar. 30, 2018) (Corley, J.) (noting that the five factors "are what courts apply when

---

[2] *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) (holding that when considering whether a dismissal of default is appropriate as a Rule 37 sanction, the court is to consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."; *True Health Chiropractic Inc v. McKesson Corp.*, No. 13CV02219HSGDMR, 2015 WL 5341592, at *6 (N.D. Cal. Sept. 12, 2015) (stating that "[a] court determines whether a case-dispositive sanction, including an exclusion sanction, is proper under a five-factor test").

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

considering whether a dismissal of default is appropriate under Rule 37, not whether an expert report should be stricken"); *United States v. N. E. Med. Servs.*, No. 10-CV-01904-CW (JCS), 2014 WL 7208627, at *8 (N.D. Cal. Dec. 17, 2014) (Spero, J.) (declining to apply *Wanderer* test to the preclusion of evidence and noting "[i]n *Wanderer*, the issue was 'whether a dismissal of default is appropriate as a Rule 37 sanction,' not whether evidence should be excluded").

Plaintiffs also cannot satisfy the standard here.  As they acknowledge, the fourth factor, *see supra* note 3, cuts against Plaintiffs' request for evidentiary sanctions because public policy favors disposition on the merits and a full evidentiary record.  *See Wanderer*, 910 F.2d at 656.  And even if the five-factor test applied, "the key factors are prejudice and the availability of lesser sanctions," *id.*, and Plaintiffs fail to show that these factors support their request for evidentiary sanctions.

Plaintiffs themselves identify two lesser sanctions that will address their allegations regarding Defendant's compliance with the Court's Order.  Moreover, they cannot show the requisite prejudice because prejudice here is when "a discovery violation 'threaten[s] to interfere with the rightful decision of the case' or 'impair[s] the moving party's ability to go to trial.'"  *Klund*, 2006 WL 549385, at *6 (citation omitted).  The element of prejudice is essential, because an evidentiary sanction interferes with the litigant's due process when they are imposed "merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 591 (9th Cir. 1983) (citation omitted). Plaintiffs bear the burden of presenting evidence of such prejudice, *id.* (denying the plaintiff's request for evidentiary exclusion sanctions and reasoning that at best, the plaintiff could establish a three-month delay in discovery), and "delayed production of documents is rarely sufficient to meet this standard." *Klund*, 2006 WL 549385 at *19.

Here, Plaintiffs cannot establish the requisite prejudice.  They contend that the SalesForce records distinguish between whether face-to-face meetings were conducted at the customer's place of business or inside a financial center.  But, they have this evidence and there is nothing particularly unique or dispositive about this evidence.  First, the ability to enter into SalesForce whether the meeting took place at a financial center (FC) or at the customer's place of business (SB) has only existed since January 2018; such entries, therefore, do not exist for the vast majority of the class

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

period.  Second, Plaintiffs had and relied on the January 2019 and April 22, 2019 SalesForce data in their Motion for Class Certification, and can rely on the May 17, 2019, SalesForce data in their reply brief.  Fourth, there is nothing particularly dispositive about the SalesForce entries because it was up to the individual SBB to enter the information, and the record is replete with other evidence regarding where the SBBs performed their job duties.  One of Plaintiffs' own declarants testified that "[i]t was BofA's expectation that I spent the majority of my time outside."  Van Hook Decl., ¶ 15, Exh. 3.  Many of the SBBs Plaintiffs surveyed reported spending at least 50% and up to 80% of their working time in the field.  *Id.*, ¶ 16, Exh. 4.

Regarding the SBB Partnership Agreements and SBB Checklists, there is no dispute regarding the contents of the SBB Partnership Agreement or the SBB Checklist.  As shown in the SBB Partnership Agreement produced by Plaintiff Lopez, the document simply confirms that the SBB intended to visit a particular financial center on a particular day of the week, and the SBB handwrote the day of the week onto the template.  Van Hook Decl., ¶ 9, Exh. 1.  The day of the week and the name of the banking (or financial) center are the only things that will vary from SBB to SBB.[3]  *Id.*  To the extent that Plaintiffs claim that these documents are relevant to their certification motion, they have made no showing why the individual documents are more probative than the templates.  As noted above, Plaintiffs' insistence that they are prejudiced unless Defendant produces Partnership Agreements and Checklists from each and every SBB belies their contention that this matter is amenable to class proof and thus class certification.  This individualized discovery, SBB-by-SBB, upon which Plaintiffs insist demonstrates why this matter is not amenable to class treatment because they tacitly admit that the class certification (and ultimate liability) question must be examined on an individual-by-individual, SBB-by-SBB basis.

Plaintiffs also cannot be prejudiced by documents which do not appear to exist – to wit, SBB job descriptions from 2015 and 2016.  Moreover, Defendant has produced job descriptions from 2012, 2013, 2014, 2017, and 2018.  Defendant has searched for and cannot locate job descriptions

---

[3] In addition, the Bank already has produced the SBB & FCM Partnership Checklist and the Small Business One Team Integration policy, both of which describe the use of the Partnership Agreement, and the SBB's role coordinating with the financial centers.  *See* Van Hook Decl. ¶ 2.

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

from 2015 and 2016. Plaintiffs also claim without analysis that they are prejudiced by not having the documents that are hyperlinked to the SBB Playbooks and certain training documents because they reflect Defendant's expectations for the SBB position. But, Plaintiffs fail to acknowledge that Defendant has produced myriad documents regarding the expectations for the SBB position, including, job descriptions for 2012, 2013, 2014, 2017, and 2018; compensation plans applicable to SBBs; SBB Playbooks; the "SBB & FCM Partnership Checklist" and the "Small Business One Team Integration" policy; personnel files for the named Plaintiffs, including their performance evaluations and performance counseling documents; exemplars of the performance evaluations for putative class members; and training documents applicable to the SBB position, such as the Prospecting Guide; the Prospect Planning Tool, the Enterprise Expense Management – Enterprise Policy; the Enterprise Corporate Accounts Payable Policy; the SBB Incentive Plan Manual; the Corporate Expense Standards – Americas Region; the Global Expense Standard; the Rules of Engagement; the Code of Conduct; the Building Relationships with Business Partners: SBB Activity Guide; the Building Relationships Participant Guide: SBBs and Small Business Client Managers; the Introduction to Small Business New Hire Training; the Selling Small Business Solutions: Small Business New Hire Training; and the Small Business Channel Incentive Plan Manual.[4]

### D.   PLAINTIFFS FAIL TO SHOW BAD FAITH OR GROSS NEGLIGENCE SUFFICIENT TO WARRANT ADVERSE INFERENCE SANCTIONS

Plaintiffs request adverse inference sanctions as to any evidence the Bank has not produced pursuant to the Court's Order. Plaintiffs' request should be denied because adverse inference instructions or sanctions should not be imposed unless bad faith or gross negligence is present. *See Karnazes v. Cty. of San Mateo*, No. C 09-0767 MMC (MEJ), 2010 WL 2672003, at *2 (N.D. Cal. July 2, 2010) (James. J.) (stating that "[a]n adverse inference instruction may be appropriate where a party's bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence") (citing *Reilly v. Natwest Markets Group, Inc.* 181 F.3d 253, 268 (2nd Cir. 1999)). Indeed, even where a party's interpretation of a Court Order is incorrect, adverse

---

[4] As noted above, Defendant is searching for additional documents, including the hyperlinked documents and will produce them if located.

inference sanctions are not proper. *See id.* (denying request for contempt sanctions on grounds that interpretation of court order, although incorrect, was not unreasonable). Here, Plaintiffs cannot show any bad faith or gross negligence.

Perhaps in an attempt to manufacture some alleged bad faith or gross negligence, Plaintiffs accuse Defendant's counsel of making "numerous misrepresentations" to the Court. But, their allegations are baseless. First, Plaintiffs contend that Defendant's counsel misrepresented that the SalesForce data did not include the location of face-to-face meetings. Dkt. 61, p. 7. They offer as alleged proof the April 22, 2019, SalesForce data in which SBBs were able, but not required to record whether their face-to-face meetings occurred at a financial center or at the customer's place of business. But, Plaintiffs fail to acknowledge that Defendant's counsel made the alleged "misrepresentation" on March 21, 2019, which was before he learned of the relatively new field in the SalesForce data which permitted but did not require the SBB to record the location of the meeting. He could not have misrepresented something on March 21, 2019, if he believed it to be accurate. Moreover, the ability to record the location in the SalesForce data did not exist until relatively late in the class period, in January 2018. So, prior to that date and for the great bulk of the class period, Defendant's counsel was correct that this location information did not exist in the SalesForce data. Plaintiffs, therefore, are asking the Court to draw adverse inferences regarding documents (or at least portions of documents) that never existed.

Second, Plaintiffs accuse Defendant's counsel of misrepresenting the record when he stated on March 21, 2019, that the SBB Partnership Agreement had not been used "for several years, if at all during the relevant period." But, this statement is demonstrably true based on the testimony of Defendant's 30(b)(6) witness, who testified that the SBB Partnership Agreement had not been used since 2016, which was three years before Defendant's counsel made the statement that the document had not been used for "several years." *See* Van Hook Decl., ¶ 6, Exh. 2, Amaral Depo. at 143:6-145:16, 161:12-165:10. Moreover, an adverse inference sanction typically requires a missing document, and, as noted above, there is no dispute regarding the contents of the SBB Partnership Agreement or the SBB Checklist. It is the template that is of interest to Plaintiffs, not the actual day of the week on which an SBB visited a financial center. Moreover, as noted above, Plaintiffs have

access to these documents by asking the putative class members for them; which presumably is how they got one from Plaintiff Lopez that they then produced in discovery.

Plaintiff cannot meet the bad faith or gross negligence standard, and their request for adverse inference sanctions should be denied. *See, e.g.*, *Brock v. Cty. of Napa*, No. C-11-0257 SBA JCS, 2012 WL 2906593, at *5 (N.D. Cal. July 16, 2012) (Spero, J.) (finding "that a sanction permitting an adverse inference would be inappropriate. Plaintiff's requested sanction is an invitation for the jury to speculate as to whether Defendant concealed evidence; however, the Court finds no basis for such speculation"); *Chavez v. Blue Sky Nat. Beverage Co.*, No. 06-06609 JSW JSC, 2011 WL 4830997, at *4 (N.D. Cal. Oct. 12, 2011) (Walker, J.) ("Although Plaintiff speculates as to what documents may have been destroyed or not produced, there is no evidence of spoliation at this juncture."); *accord Hamilton v. Signature Flight Support Corp.*, No. C 06-0490 CW (MEJ), 2005 WL 3481423 at *8 (N.D. Cal. Dec. 20, 2005) (James, J.) (stating that to determine prejudice in the context of spoliation, the test "is whether there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed or altered, and which was not otherwise obtainable, would produce evidence favorable to the objecting party").[5]

### E.   MONETARY SANCTIONS WOULD BE UNJUST

Plaintiffs' request for monetary sanctions also is improper in this case because Defendant has not intentionally violated the Court's Order and, therefore, there is no conduct to deter. For example, Defendant was of the good faith belief that its prior production of SalesForce data was consistent with the Court's Order. It then took the additional step of producing additional SalesForce data on April 22, 2019, after the Court's Order and on May 17, 2019, in an attempt to respond to Plaintiff's instant motion. Even if the Bank's interpretation of the Order proves incorrect, monetary sanctions are not necessary where, as here, the Bank has a good faith and reasonable explanation for the alleged failure to produce the requested discovery and promptly took steps to

---

[5] *See also Rooney*, 2011 WL 2149097, at *4 (holding that the plaintiff had received nearly all of the documents it requested, and any resulting prejudice to plaintiff can be cured through less severe means); *Mixt Greens v. Sprout Café*, No. C-08-5175 EMC, 2010 WL 2555753, at *1 (N.D. Cal. June 21, 2010) (Chen, J.) (preclusion sanction would be "excessively severe" where defendants belatedly produced nearly all discovery sought and plaintiff did not suffer irreparable prejudice).

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

obtain and produce additional data and documents, and bore all the expenses required to do so.  In

*Garcia v. City of Santa Clara*, No. 10-CV-02424-SI, 2017 WL 1398263, at *5 (N.D. Cal. Apr. 19,

2017), in determining whether monetary sanctions were appropriate, the Court reasoned:

> The discovery record in this matter is far from perfect.  Although plaintiff's counsel
> expended great effort in obtaining certain discovery – discovery that likely would
> have been omitted if not for counsel's efforts – ***defendants eventually produced
> whatever they could.***  Now that many of the requested items have been produced,
> plaintiff will have the benefit of these items (to the extent admissible) at trial.
> Relying on its "wide discretion in controlling discovery," *Ollier*, 768 F.3d at 862,
> the Court declines to levy such significant monetary sanctions.

*Id.*  As described above, similar to *Garcia*, the Bank has produced additional SalesForce data, has

gone to great lengths to identify and collect any SBB Partnership Agreements or Checklists that the

SBBs might have been used and distributed in the field, and will continue to produce documents

responsive to Plaintiffs' requests as they are identified and located.  Under these circumstances,

monetary sanctions are not warranted.

Moreover, even if Plaintiffs had satisfied the requirements for a monetary sanction, their

request should still be denied.  First, the Court should reject Plaintiffs' request for fees that are not

properly related to Defendant's alleged violation of the Court's April 15, 2019, Order.  For example,

Plaintiffs request an award of sanctions for the 12.8 hours that their counsel spent on "Review of

Productions," but they presumably would have reviewed the production in any event.  *See Apple,

Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 5451411, at *6 (N.D. Cal. Nov. 7,

2012) (Grewal, J.) (agreeing that the defendant "should not receive fees for reviewing documents it

needed to review for discovery anyway").  Plaintiffs also request 6.1 hours of work toward "Court

Submissions," which they explain to be the time spent "preparing correspondence notifying the

Court of Defendant's non-compliance with its orders."  Dkt. #61-1, ¶ 23.  But, they are not entitled

to this time to the extent they are referring to the two unilateral discovery letters which they

submitted in contravention of the Court's Standing Order.  *See* Dkts. #54, 55.  Indeed, they cannot

establish that they are entitled to reimbursement for any time before the April 15, 2019, Order.[6]

---

[6] *Toth v. Trans World Airlines, Inc.*, 863 F.2d 1381, 1386 n.2 (9th Cir. 1988) ("[Rule]
37(b)(2) 'must be distinguished from Rule 37(a), which provides for the award of expenses resulting
from efforts to secure an order compelling discovery.'  Thus, 'attorney-time before and during' a

Second, "[i]t is the obligation of the party seeking fees "to provide evidence outside of an attorney affidavit that its counsels' hourly rates are reasonable." *See Apple, Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 5451411, at *6. Plaintiffs request rates of $820 and $525 per hour but do not support those rates with evidence outside of their own affidavits. In *Swallow v. Toll Brothers*, No. C-08-02311 JCS, 2009 WL 513486 (N.D. Cal. Mar. 2, 2009) (Spero, J.), for example, the Court determined the reasonable rate based on "declarations by other practitioners in the field . . . who are familiar with [the attorney's] skills and expertise stating that the rate sought for [the attorney] is in line with the rates charged by other attorneys' [sic] in the Bay area with similar experience and skills for comparable work."[7] Plaintiffs offer no such evidence here.

**IV.     CONCLUSION**

For all of the foregoing reasons, the Bank respectfully requests that the Court deny Plaintiffs' Motion for Sanctions in its entirety.

DATED:  May 22, 2019                    **MCGUIREWOODS LLP**


                                        By:  /s/ Ashley R. Li
                                             _____
                                             Michael D. Mandel
                                             Sylvia J. Kim
                                             John A. Van Hook
                                             Lindsay L. Ryan
                                             Ashley R. Li

                                             Attorneys for Defendant
                                             Bank of America, N.A.

---

hearing in which a court order is imposed is 'not attorney-time incurred on account of [appellants'] failure to obey an order.'"); *Uschold v. Carriage Servs., Inc.*, No. 17-cv-04424-JSW (EDL), 2019 WL 1975433, at *8 (N.D. Cal. Mar. 15, 2019) (Laporte, J.) ("However, not all expenses related to meet and confer efforts are recoverable because in all cases the applicable rules require parties to meet and confer before submitting a discovery dispute to the Court for resolution."); *Matrix Motor Co. Inc. v. Toyota Motor Sales, USA, Inc.*, No. SACV03601CJCJTLX, 2003 WL 22466218, at *3 (C.D. Cal. May 8, 2003).

[7] The Court should also consider the prevailing market rates in the forum district. *Apple, Inc.*, 2012 WL 5451411, at *6.

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 22, 2019, at Los Angeles, California.



ASHLEY R. LI

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**