**McGUIREWOODS LLP**
Matthew C. Kane (SBN 171829)
mkane@mcguirewoods.com
Michael D. Mandel (SBN 216934)
mmandel@mcguirewoods.com
John A. Van Hook (SBN 205067)
jvanhook@mcguirewoods.com
Lindsay L. Ryan (SBN 258130)
lryan@mcguirewoods.com
Ashley R. Li (SBN 317305)
ali@mcguirewoods.com
1800 Century Park East, 8th Fl.
Los Angeles, CA 90067-1501
Telephone:  (310) 315-8200
Facsimile:  (310) 315-8210

Sylvia J. Kim (SBN 258363)
Email:  skim@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone:  415.844.9944
Facsimile:  415.844.9922

Attorneys for Defendant
BANK OF AMERICA, N.A.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA LOPEZ, SAMUEL WILLIS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 18-cv-02346-VC<br><br>**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER:**<br><br>• ***EX PARTE* APPLICATION**<br>• **MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>  ***Filed Under Separate Covers*:**<br><br>• **DECLARATION OF JOHN MOON**<br>• **DECLARATION OF ASHLEY R. LI**<br>• **APPENDIX OF EVIDENCE**<br>• **[PROPOSED] ORDER / TEMPORARY RESTRAINING ORDER**<br><br>Date:         TBD<br>Time:         TBD<br>Courtroom: 2 – 17th Floor<br>Judge:        Hon. Vince Chhabria |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

*EX PARTE* APPLICATION .............................................................................................. vii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.     INTRODUCTION.......................................................................................................... 1

II.    STATEMENT OF THE CASE .................................................................................... 2

     A.    PLAINTIFFS' ATTORNEYS AND THE RELEVANT PARTIES ......................... 2

     B.    WYNNE ENGAGES IN HARASSMENT AND INTIMIDATION TACTICS AGAINST
          THE DECLARANTS ................................................................................... 2

     C.    WHEN THE DECLARANTS IGNORED OR REFUSED TO SPEAK TO HIM, WYNNE
          PERSISTS WITH HIS INTIMIDATION CAMPAIGN, GOING SO FAR AS TO CALL
          SOME OF THE DECLARANTS' FAMILY MEMBERS ...................................... 3

          1.    Ms. Bostani ........................................................................... 3

          2.    Mr. Moon .............................................................................. 4

          3.    Mr. Jewett ............................................................................. 4

          4.    Mr. Cabrera ........................................................................... 4

     D.    THE BANK GAVE NOTICE OF THIS *EX PARTE* APPLICATION TO PLAINTIFFS ............ 5

III.   A NO CONTACT OR PROTECTIVE ORDER OR A TRO SHOULD BE
     GRANTED ....................................................................................................... 5

     A.    THE COURT HAS THE INHERENT AUTHORITY TO ISSUE A NO CONTACT
          ORDER, OR ENTER A PROTECTIVE ORDER UNDER RULE 26, LIMITING
          WYNNE'S COMMUNICATIONS WITH THE DECLARANTS .......................... 5

          1.    Applicable Legal Standard ...................................................... 5

          2.    The Court Should Enter An Order Protecting The Declarants From
               Further Harassment And Intimidation By Wynne That Threatens
               The Fairness Of The Litigation ............................................... 7

     B.    THE COURT ALSO HAS THE EXPRESS AUTHORITY UNDER RULE 65 TO
          GRANT A TRO ENJOINING WYNNE'S COMMUNICATIONS WITH PCMS .................. 9

          1.    Applicable Legal Standard ...................................................... 9

          2.    The Likelihood Of Success On The Merits Weighs In The Bank's
               Favor Because Wynne Committed Serious Misconduct In His
               Communications With PCMs .................................................. 10

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR
TEMPORARY RESTRAINING ORDER**

3.     The Bank And The Declarants Will Suffer Irreparable Harm
       Without A TRO .................................................................................. 11

4.     The Balance Of The Equities Weighs In The Bank's Favor ..................... 12

5.     An Injunction Will Serve The Public Interest ........................................... 13

IV.    CONCLUSION ................................................................................................. 15

CERTIFICATE OF SERVICE ....................................................................................... 16

18-cv-02346-VC
**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR
TEMPORARY RESTRAINING ORDER**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*AAMCO Transmissions, Inc. v. Dunlap*,
    No. 11-4009, 2015 WL 4476423 (E.D. Pa. July 22, 2015)........................................11

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011).................................................................................10

*Amoco Prod. Co. v. Vill. of Gambell, Alaska*,
    480 U.S. 531 (1987).................................................................................................13

*Arrendondo v. Delano Farms Co.*,
    No. CV F 09-1247 LJO DLB, 2010 WL 3212000 (E.D. Cal. Aug. 10, 2010) ...................11, 12

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
    729 F.3d 937 (9th Cir. 2013).....................................................................................10

*Belt v. Emcare, Inc.*,
    299 F. Supp. 2d 664 (E.D. Tex. 2003) ......................................................................6

*Bobryk v. Durand Glass Manufacturing Co.*,
    No. 12-CV-5360, 2013 WL 5574504 (D.N.J. Oct. 9, 2013)...............................13, 14

*Cal. Pharmacists Ass'n v. Maxwell–Jolly*,
    596 F.3d 1098 (9th Cir. 2010)..................................................................................13

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)...................................................................................................12

*Estakhrian v. Obenstine*,
    No. CV 11-3480 FMO (CWX), 2017 WL 2661616 (C.D. Cal. June 20, 2017)................10, 11

*Excel Innovations, Inc. v. Indivos Corp.*,
    No. C-03-3125 MMC (JCS), 2006 WL 8439364 (N.D. Cal. Nov. 21, 2006)...........................6

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984)..................................................................................10

*Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers*,
    415 U.S. 423 (1974).................................................................................................9

*Grewe v. Cobalt Mortg., Inc.*,
    No. C16-577-JCC, 2016 WL 4547131 (W.D. Wash. Sept. 1, 2016)....................7, 10

*Guifu Li v. A Perfect Day Franchise, Inc.*,
    270 F.R.D. 509 (N.D. Cal. 2010) ..............................................................................9

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR
TEMPORARY RESTRAINING ORDER**

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ....................................................................5, 7, 13

*Hall v. Midland Group*,
   No. CIV.A. 99–3108, 2000 WL 1725238 (E.D. Pa. Nov. 20, 2000) ......................................7, 8

*Impervious Paint Industries v. Ashland Oil*,
   508 F.Supp. 720 (W. D. Ky. 1981) ...........................................................7

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ..............................................................10

*Local 34 Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders v. N. California Carpenters Reg'l Council*,
   139 F.3d 905 (9th Cir. 1998) ...............................................................12

*Moreno v. Autozone, Inc.*,
   No. C05-04432 MJJ, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) ............................................9

*Moulton v. U.S. Steel Corp.*,
   581 F.3d 344 (6th Cir. 2009) ...............................................................7

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
   434 U.S. 1345 (1977) .......................................................................9

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2013 WL 6407583 (N.D. Cal. 2013)...................................................5, 6

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .......................................................................12

*Parks v. Eastwood Ins. Services, Inc.*,
   235 F.Supp.2d 1082 (C.D. Cal. 2002)......................................................5, 7

*Phillips v. General Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002).............................................................6

*Pickett v. Nev. Bd. of Parole Com'rs*,
   2012 WL 1376969 (D. Nev. Apr. 19, 2012) .................................................6

*Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders Local Union 34 v. N. California Carpenters Reg'l Council*,
   992 F. Supp. 1138 (N.D. Cal. 1997) .......................................................12

*Pollar v. Judson Steel Corp.*,
   No. C 82-6833 MHP, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984) ..............................7

*Resnick v. American Dental Ass'n*,
   95 F.R.D. 372 (N.D. Ill. 1982) ...........................................................9

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*,
  No. 12-cv-00944-JST, 2016 WL 4080294 (N.D. Cal. 2016)......................................6

*Rizzo v. Goode*,
  423 U.S. 362 (1976) ................................................................................................12

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ....................................................................................................6

*Stransky v. HealthONE of Denver, Inc.*,
  929 F.Supp.2d 1100 (D. Colo. 2013) .......................................................................7

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
  240 F.3d 832 (9th Cir. 2001) ..................................................................................10

*Talavera v. Leprino Foods Co*,
  1:15-cv-105-AWI-BAM, 2016 WL 880550 (E.D. Cal. Mar. 8, 2016) ......................7

*Tapgerine, LLC v. 50Mango, Inc.*,
  No. C 16-06504 WHA, 2017 WL 1956874 (N.D. Cal. May 11, 2017) ......................6

*Tedesco v. Mishkin*,
  629 F. Supp. 1474 (S.D.N.Y. 1986) ........................................................................14

*Tiki Shark Art Inc. v. CafePress, Inc.*,
  No. CIV. 13-00577 JMS, 2014 WL 3928799 (D. Haw. Aug. 12, 2014) ...................6

*Toyo Tire Holdings Of Ams. Inc. v. Cont'l Tire N. Am., Inc.*,
  609 F.3d 975 (9th Cir. 2010) ..................................................................................10

*U.S. Philips Corp. v. KBC Bank N.V.*,
  590 F.3d 1091 (9th Cir. 2010) ..................................................................................9

*Wang v. Chinese Daily News, Inc.*,
  623 F.3d 743 (9th Cir. 2010) ....................................................................................5

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*,
  526 F.2d 86 (9th Cir. 1975) ....................................................................................10

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ....................................................................................................10

*Wright v. Adventures Rolling Cross Country, Inc.*,
  No. 12-0982 EMC, 2012 WL 2239797 (N.D. Cal. June 15, 2012) ...........................8

*Yue v. Storage Tech. Corp.*,
  No. C07-05850 JW, 2008 WL 4185835 (N.D. Cal. Sept. 5, 2008) ...........................6

*Yumul v. Smart Balance, Inc.*,
  No. 10-00927, 2010 WL 4352723 (C.D. Cal. Oct. 8, 2010) ......................................9

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

*Yvon v. City of Oceanside*,
   202 F. Supp. 3d 1147 (S.D. Cal. 2016) ...................................................................13

**CALIFORNIA CASES**

*Cal-Pak Delivery, Inc. v. United Parcel Serv.*,
   52 Cal.App.4th 1 (1997)................................................................................................9

*Chronometrics, Inc. v. Sysgen, Inc.*,
   110 Cal.App.3d 597 (1980)..........................................................................................9

*Parris v. Superior Court*,
   109 Cal.App.4th 285 (2003)..........................................................................................7

**CALIFORNIA STATUTES**

Cal. Code Civ. P.
   § 527.6 ......................................................................................................................14
   § 1708.7 ....................................................................................................................14

**FEDERAL RULES**

Fed. R. Civ. P.
   23(d)(1)(B)(i) ..............................................................................................................5
   26(c) ...........................................................................................................................6
   65(a) .....................................................................................................................9, 14
   65(b) ...........................................................................................................................9

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

## *EX PARTE* APPLICATION

**TO THE HONORABLE VINCE CHHABRIA, UNITED STATES DISTRICT JUDGE, AND TO PLAINTIFFS LAURA LOPEZ AND SAMUEL WILLIS AND THEIR ATTORNEYS OF RECORD:**

Defendant Bank of America, N.A. ("Defendant" or "the Bank") hereby applies, *ex parte*, pursuant to Fed. R. Civ. P. 23(d), 26(c) and 65, Local Rules 7-10 and 65-1, and the Court's inherent authority, for:

(1)     A no contact order, protective order, or temporary restraining order ("TRO") barring Edward Wynne ("Wynne") and other members of Wynne Law Firm from initiating further contact with any putative class members ("PCMs") who provided declarations in support of the Bank's Opposition to Plaintiffs' Motion for Class Certification ("MCC"), and with their respective family members; and

(2)     An order directing Wynne to submit a declaration and exhibits identifying all of the Bank's PCM declarants he has contacted or attempted to contact since the filing of the Bank's Opposition to Plaintiffs' MCC – either directly or indirectly through family members or other individuals associated with the PCMs – and setting forth the nature and substance of those contacts or communications, including copies of electronic communications, so that the Court may assess their propriety and any curative action required, and

(3)     Leave to file a supplemental brief in further opposition to Plaintiffs' MCC addressing Wynne's inadequacy to serve as class counsel given his harassing and intimidating actions toward his own putative clients; and/or

(4)     Such other relief as the Court deems just and proper under the circumstances.

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

This *ex parte* application is brought on the grounds that the Court's immediate intervention is needed to protect these PCMs from Wynne's campaign of abuse and intimidation, prevent future harm to the Bank's ability to defend itself, and protect the integrity of these proceedings.

Notice of this *ex parte* application was provided to counsel for Plaintiffs via email on June 5, 2019. *See* Declaration of Ashley R. Li, ¶ 7, Exh. 3.

DATED:  June 5, 2019                    MCGUIREWOODS LLP


By:   */s/ Matthew C. Kane*
      Matthew C. Kane
      Michael D. Mandel
      Sylvia J. Kim
      John A. Van Hook
      Lindsay L. Ryan
      Ashley R. Li

      Attorneys for Defendant
      Bank of America, N.A.

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

What would this Court do if it learned that, immediately after Plaintiffs filed their motion for class certification and supporting putative class member ("PCM") declarations, *defense* counsel embarked on a campaign to harass and intimidate the PCM declarants by doing the following:  (1) relentlessly contacting them via phone calls to their personal cell phones and places of business, (2) leaving them voicemails when they refuse to take those calls and, undeterred by their refusals to speak, then (3) contacting their family members to track them down and (4) sending them social media messages telling them (a) he has conducted a search on them, (b) he knows where they live, and (c) that they have made a "big mistake" for which there will be "ramifications"?  Undoubtedly, the Court would not countenance such egregious, unethical behavior and would put a stop to it *post haste*.  Luckily, *defense* counsel has not done any of these things here, but ***Plaintiffs' counsel <u>has</u>***.

Two days after Defendant Bank of America, N.A. (the "Bank") filed its Opposition to Plaintiffs' Motion for Class Certification ("MCC"), Plaintiffs' counsel, Edward Wynne of Wynne Law Firm, ***began harassing PCMs*** who voluntarily provided declarations in support thereof with calls and threatening messages to them and their family members.  Wynne told these PCMs that there would be "ramifications" for providing such declarations and that they had made a "big mistake" in doing so.  Six days later, when the declarants *still* refused to speak to him, ***Wynne started contacting their family members*** in what can only be described as an attempt to harass and intimidate them into silence and/or to coerce them to retract their declaration testimony and deter them from providing future testimony favorable to the Bank in this action.  The Court's immediate intervention is needed to protect these PCMs from Wynne's campaign of abuse and intimidation, prevent future harm to the Bank's ability to defend itself, and protect the integrity of these proceedings.  Accordingly, the Bank requests that the Court grant this *Ex Parte* Application and:

(1)   Enter a no contact order, protective order, or temporary restraining order ("TRO") barring Wynne and other members of Wynne Law Firm from initiating further contact with any PCMs who provided declarations in support of the Bank's Opposition to Plaintiffs' MCC, and with their respective family members; and

(2)     Order Wynne to submit a declaration and exhibits identifying all of the Bank's PCM declarants he has contacted or attempted to contact since the filing of the Bank's MCC Opposition – either directly or indirectly through family members or other individuals associated with the PCMs – and setting forth the nature and substance of those contacts or communications, including copies of electronic communications, so that the Court may assess their propriety and any curative action required, and

(3)     Grant the Bank leave to file a supplemental brief in further opposition to Plaintiffs' MCC addressing Wynne's inadequacy to serve as class counsel given his harassing and intimidating actions toward his own putative clients.

## II.     STATEMENT OF THE CASE

### A.     PLAINTIFFS' ATTORNEYS AND THE RELEVANT PARTIES

Plaintiffs are seeking to represent a class of approximately 500 Small Business Bankers ("SBBs") currently or formerly employed by the Bank for alleged wage and hour violations.  *See* Second Amended Complaint (Dkt. #31).  Plaintiffs' attorneys of record are Edward Wynne and George Nemiroff, both of Wynne Law Firm.

On May 1, 2019, Plaintiffs filed their MCC.  *See* Dkt. #58.  On May 22, 2019, the Bank filed its Opposition thereto.  *See* Dkt. #63.  In support of its MCC Opposition, the Bank submitted declarations from, *inter alia*, Wilber Cabrera, Ramona Bostani, Gregory Jewett, and John Moon (collectively, the "Declarants"), all of whom worked as SBBs for the Bank during the relevant putative class period.[1]  *See* Dkt. #63-4, #63-5, #63-6, #63-7.

### B.     WYNNE ENGAGES IN HARASSMENT AND INTIMIDATION TACTICS AGAINST THE DECLARANTS

On May 24, 2019, ***two days after filing its MCC Opposition***, the Banks's counsel received disturbing phone calls and emails from every single one of the Declarants.  Specifically, they alerted the Bank's counsel that Wynne was contacting them via LinkedIn, email, and telephone, and asking whether they knew the "ramifications" of the declarations they signed.  *See* Declaration of Ashley R. Li (hereinafter "Li Decl."), ¶¶ 2-6, Exh. 1, 2; Declaration of John Moon (hereinafter, "Moon

---

[1] The Bank also submitted a declaration from Luis Navarro.  *See* Dkt. #63-8.

Decl."), ¶¶ 3-5, Exh. 1.  Mr. Cabrera, Mr. Moon and Ms. Bostani provided the Bank's counsel screen

shots of Wynne's initial messages to them via LinkedIn, which were identical and state, in pertinent

part, as follows:

> "I am the attorney representing the SBBs in the BofA SBB overtime case.  I see
> that you signed a declaration for your employer.  I can understand why you may
> have felt compelled to do so.  I would like to discuss the ramifications of that
> declaration with you and understand what you believe you were signing.  You
> [may] call me on a confidential basis."

*See* Li Decl., ¶¶ 4-6, Exhs. 1, 2; Moon Decl., ¶ 3, Exh. 1.

Mr. Jewett informed the Bank's counsel that Wynne similarly contacted him, and that

Wynne stated that he made a "big mistake" by signing his declaration.  *See* Li Decl., ¶ 3.

While troubled to learn about the implications of these communications, the Bank's counsel

advised the Declarants that they were free to either speak with Wynne or not speak with him, and

that there would be no retaliation or reward by the Bank either way.  *See* Li Decl., ¶¶ 2, 6.

### C. WHEN THE DECLARANTS IGNORED OR REFUSED TO SPEAK TO HIM, WYNNE PERSISTS WITH HIS INTIMIDATION CAMPAIGN, GOING SO FAR AS TO CALL SOME OF THE DECLARANTS' FAMILY MEMBERS

#### 1. Ms. Bostani

Two days after Wynne first contacted Ms. Bostani via LinkedIn messaging, she responded

to his message and explicitly told him that she has *no interest* in speaking with him:



**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

*See* Li Decl., ¶¶ 5-6, Exh. 2.  Undeterred by Ms. Bostani's unequivocal response of "Not interested in talking to you!," Wynne then proceeded to call Ms. Bostani's *mother* and Ms. Bostani directly on her personal cell phone in an attempt to convince her to "change [her] mind."   *Id.* at ¶ 6, Exh. 2. Wynne stated that he had "done a search on [Ms. Bostani] and he has all [her] numbers and [her] home address."  *Id.*  Troubled by what she self-described as Wynne's "harassment" toward her and her family members, Ms. Bostani sought assistance from the Bank's counsel to "stop [Wynne] from bothering me and my family":

> Good morning,
> This lawyer is truly crossing the line. As you can see in the attached screenshot I made it very clear that I don't want to talk to him.
> Yesterday he called my mother and made her feel really uncomfortable trying to get my number. Then he called my personal cell and spoke to me trying to change my mind. He said he has done a search on me and he has all my numbers and my home address. To me this is harassment! I made it clear I don't want to talk to him.
> Is there a way we can make him stop from bothering me and my family?

*Id.*

### 2.   Mr. Moon

Mr. Moon chose not to respond to Wynne's initial LinkedIn message.  *See* Moon Decl., ¶ 3. Therefore, on May 27 or 28, Wynne called Mr. Moon's *mother's* personal cell phone to leave what Mr. Moon described as an "aggravated" voicemail message, which confused Mr. Moon's mother whose first language is not English.   *Id.* at ¶ 4.  Thereafter, on May 29, 2019, Wynne called Mr. Moon's personal cell phone and left him a voicemail message asking to speak with him about the "legal ramifications" of his declaration and whether he understood the consequences of what he signed.  *Id.* at ¶ 5.  Mr. Moon does not want to speak to Wynne and wants Wynne to stop contacting him and his family members.  *Id.* at ¶ 6.

### 3.   Mr. Jewett

Mr. Jewett also ignored Wynne's LinkedIn message, so Wynne proceeded to call him at work.  Li Decl., ¶ 3.  Mr. Jewett has told Wynne that he does not want to speak to him.  *Id.*

### 4.   Mr. Cabrera

Mr. Cabrera similarly chose to not respond to Wynne's LinkedIn message.  *Id.* at ¶ 4.  Wynne then called and left a voicemail message on Mr. Cabrera's personal cell phone asking to speak with

him about the declaration that he signed.  Mr. Cabrera has chosen to continue to ignore Wynne.  *Id.*

**D.    THE BANK GAVE NOTICE OF THIS *EX PARTE* APPLICATION TO PLAINTIFFS**

On June 5, 2019, the Bank notified Plaintiffs' counsel via email of its intent to file this *Ex Parte* Application and the nature of the relief being sought herein.  *See* Li Decl., ¶ 7, Exh. 3.  As demonstrated below, given the improper nature of Wynne's abusive communications, the Court should grant this Motion and the requested relief.

**III.    A NO CONTACT OR PROTECTIVE ORDER OR A TRO SHOULD BE GRANTED**

**A.    THE COURT HAS THE INHERENT AUTHORITY TO ISSUE A NO CONTACT ORDER, OR ENTER A PROTECTIVE ORDER UNDER RULE 26, LIMITING WYNNE'S COMMUNICATIONS WITH THE DECLARANTS**

**1.    Applicable Legal Standard**

This Court has "both the duty and the broad authority to ... enter appropriate orders governing the conduct of [class] counsel and parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).    Accordingly, "district courts have both a duty and broad authority to control communications to [PCMs] even before class certification and to enter appropriate orders governing the conduct of counsel and the parties."  *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, *4 (N.D. Cal. 2013) (Chen, J.).  Further, while the Rules of Professional Conduct do not bar communications with PCMs by a party, a court may choose to restrict such pre-certification communications if presented with "a clear record and specific findings that reflect ... the need for a limitation and the potential interference with the rights of the parties."  *Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d 1082, 1084 (C.D. Cal. 2002) (quoting *Gulf Oil*, 452 U.S. at 101).

Under Federal Rule of Civil Procedure 23(d)(1)(B)(i), "the [C]ourt may issue orders that require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of any step in the action."  *See Gulf Oil*, 452 at 99-100.  As the Ninth Circuit held in *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74 (2011), "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation."  "This discretion includes requiring the issuance of corrective notices and action to ameliorate confusing or misleading communications."  *O'Connor*, 2013 WL 6407583, at

*7 (citing *Belt v. Emcare, Inc.,* 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003)).  A finding of "actual misconduct" is not necessary to invoke the Court's authority to limit communications; rather, "[t]he key is whether there is potential interference with the rights of the parties in a class action." *Id.* at *4-5  "[T]he touchstone under Rule 23(d) is … whether the communication is abusive, misleading, coercive, or otherwise affects the administration of justice in the context of a putative class action lawsuit."  *O'Connor*, 2013 WL 6407583, at *7.  As such, courts have "imposed limitations on communications, and invalidated agreements obtained through those communications, based on findings that the communications were misleading, coercive, or omitted critical information." *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, No. 12-cv-00944-JST, 2016 WL 4080294, *6 (N.D. Cal. 2016) (Tigar, J.) (citing cases).

Additionally, the Court is authorized under Federal Rule of Civil Procedure 26(c) to grant a protective order when the moving party establishes "good cause" for the order and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  The moving party must show a particular and specific need for the protective order.  *See Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) ("The district courts have "broad latitude" to decide "when a protective order is appropriate and what degree of protection is required.") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).[2]

---

[2] Moreover, where, like here, egregious conduct is involved, a movant's noncompliance with the meet and confer requirement for protective orders is excusable.  *See, e.g.*, *Tapgerine, LLC v. 50Mango, Inc.*, No. 16-06504 WHA, 2017 WL 1956874, at *3 (N.D. Cal. May 11, 2017) (Alsup, J.) ("Taking into account plaintiffs' bad faith usage of judicial resources, public policy strongly favors disposition of this motion on its merits. The Court therefore will excuse [defendant's] noncompliance with the meet and confer requirement."); *Excel Innovations, Inc. v. Indivos Corp.*, No. C-03-3125 MMC (JCS), 2006 WL 8439364, at *9 (N.D. Cal. Nov. 21, 2006) (Spero, M.J.) ("[I]n light of the serious misconduct alleged and [Plaintiffs'] denial that any misconduct occurred, efforts to meet and confer would likely have been futile."); *accord Yue v. Storage Tech. Corp.*, No. C07-05850 JW, 2008 WL 4185835, at *7 (N.D. Cal. Sept. 5, 2008) (Ware, J.) ("Here, ordering the parties to meet and confer would … be futile."); *Pickett v. Nev. Bd. of Parole Com'rs*, 2012 WL 1376969, at *3 (D. Nev. Apr. 19, 2012) (noting that "courts have held that 'special circumstances' … can obviate a requesting parties' need to meet and confer"); *Tiki Shark Art Inc. v. CafePress, Inc.*, No. CIV. 13-00577 JMS, 2014 WL 3928799, at *3 (D. Haw. Aug. 12, 2014) ("However, where requiring the parties to meet and confer would be futile, or depending upon the particular circumstances of a case, courts may address a motion's merits despite a party's failure to comply with a meet-and-confer requirement.").

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

> **2.** **The Court Should Enter An Order Protecting The Declarants From Further Harassment And Intimidation By Wynne That Threatens The Fairness Of The Litigation**

The Court has the authority to restrict or limit communications by counsel to PCMs that are "misleading or improper" and may potentially interfere with the rights of the parties in a class action. *Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d 1082, 1083 (C.D. Cal. 2002) (citing *Impervious Paint Industries v. Ashland Oil*, 508 F.Supp. 720, 723 (W. D. Ky. 1981); *Pollar v. Judson Steel Corp.*, No. C 82-6833 MHP, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984) (Patel, J.)); *Grewe v. Cobalt Mortg., Inc.*, No. C16-577-JCC, 2016 WL 4547131, at *2 (W.D. Wash. Sept. 1, 2016) (applying the same standard). Wynne's conduct more than meets this standard to warrant relief.

While the Bank acknowledges that prospective class counsel may communicate with PCMs, ***counsel may not do so in a misleading or coercive way***. "Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall impression or message left by the communication." *Talavera v. Leprino Foods Co*, 1:15-cv-105-AWI-BAM, 2016 WL 880550, at *5 (E.D. Cal. Mar. 8, 2016).[3]

Here, Wynne's communications to the Declarants conveyed an overall "threatening" and "annoying" message that providing their declarations (and any future testimony) in support of the Bank in this action would expose them and their family members to harassing communications and probing into their personal lives notwithstanding their refusal to communicate with Wynne. Indeed, Wynne proceeded to contact the Declarants' family members when he could not speak with the Declarants themselves, or when the Declarants expressly refused to speak with him. Such conduct far exceeds the ethical limits imposed on counsel.[4] Further, Wynne's statements to Ms. Bostani that

---

[3] *See also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353 (6th Cir. 2009) (affirming district court's order directing issuance of corrective notice and extension of the opt-out period to "unwind the confusion" caused by plaintiffs' attorney's unilateral communications with PCMs to procure post-certification opt-outs) (citing *Gulf Oil*); *Stransky v. HealthONE of Denver, Inc.*, 929 F.Supp.2d 1100, 1108-09 (D. Colo. 2013) (finding defendants' misleading statements about potential monetary consequences of outcome "likely to confuse, if not coerce").

[4] *Cf. Hall v. Midland Group*, No. CIV.A. 99–3108, 2000 WL 1725238, at *3 (E.D. Pa. Nov. 20, 2000) ("The character and ethics of class counsel may conceivably bear on the adequacy of representation."); *Parris v. Superior Court*, 109 Cal.App.4th 285, 298 (2003) ("When engaging in precertification communications, as is equally true with any communication with a prospective

he has done a "search on her" and has "all [her] numbers and [her] home address," **even after Ms. Bostani explicitly refused to speak with him**, can be characterized as nothing other than an attempt to coerce and intimidate her into silence.  Indeed, Ms. Bostani has requested the Bank's counsel's assistance to stop Wynne's "harassment" of her and her family members.  Similarly, Wynne's threatening messages to the Declarants stating that there will be "ramifications" for their choosing to provide declarations in support of the Bank's MCC Opposition, and that they made a "big mistake" in doing so, are misleading, intimidating, and constitute improper attempts to interfere with PCMs' rights to provide truthful testimony in this action.  Wynne's conduct is, in essence, witness tampering.  *Cf. Wright v. Adventures Rolling Cross Country, Inc.*, No. 12-0982 EMC, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012) (Chen, J.) (enjoining defendants from communicating with PCMs after they e-mailed PCMs warning that if they participate in the suit, their "past transgressions will become very public" and they will be "left with tattered reputations and substantial legal bills").

As Wynne's harassing, persistent, and annoying conduct targeting the Declarants will undoubtedly continue, good cause exists for the Court to issue a no contact order or a protective order prohibiting Wynne and other members of Wynne Law Firm from further contacting the Declarants and their family members.

In addition, the Bank also requests that the Court order Wynne to submit a declaration and exhibits identifying any of the Bank's other PCM declarants he has contacted or attempted to contact, directly or indirectly, so the Court may determine whether he has acted improperly toward them as well.  Given Wynne's brazen attempts at intimidating and manipulating the Declarants, it is not unlikely that he has acted improperly towards others as well.

Finally, the Bank requests that the Court grant it leave to file a supplemental brief in further opposition to Plaintiff's MCC addressing Wynne's inadequacy to serve as class counsel given his

---

client, a member of the State Bar of California must comply with the requirements of rule 1–400 of the Rules of Professional Conduct and abide by its prohibitions on false, misleading and deceptive messages or face possible disciplinary action.").

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

harassing and intimidating actions toward his own putative clients.[5]  Ironically, the ***very individuals who want Wynne's conduct stopped and do not want to communicate with him are individuals he seeks to represent as class counsel*** in Plaintiffs' MCC.  *See generally Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376 (N.D. Ill. 1982) (once class is certified, class members are represented by class counsel for purposes of ethical rules prohibiting contact with represented parties).

### B.   THE COURT ALSO HAS THE EXPRESS AUTHORITY UNDER RULE 65 TO GRANT A TRO ENJOINING WYNNE'S COMMUNICATIONS WITH PCMS

#### 1.   Applicable Legal Standard

Federal Rule of Civil Procedure 65 authorizes the Court to issue TROs and preliminary injunctions.  Fed. R. Civ. P. 65(a), (b).  Generally, the purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered, *see U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held.  *See Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers*, 415 U.S. 423, 439 (1974).  Requests for TROs are governed by the same general legal standards that govern the issuance of a preliminary injunction.  *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Parties seeking injunctive relief must show that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of

---

[5] *See, e.g.*, *Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *7 (N.D. Cal. Dec. 6, 2007) (Jenkins, J.) (quoting *Cal-Pak Delivery, Inc. v. United Parcel Serv.*, 52 Cal.App.4th 1, 11-12 (1997)) (noting that class counsel are subject to a "'heightened standard' which they must meet if they are to be allowed by the Court to represent absent class members" and that "the Court has an obligation to closely scrutinize the qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs, are adequately represented"); *Chronometrics, Inc. v. Sysgen, Inc.*, 110 Cal. App. 3d 597, 607-08 (1980) (holding that disqualification is proper if counsel's misconduct is likely to have a continuing effect on the proceedings); *Yumul v. Smart Balance, Inc.*, No. 10-00927, 2010 WL 4352723, at *4 (C.D. Cal. Oct. 8, 2010) ("In determining whether to certify a class in this case, however, unethical conduct by plaintiff's counsel would be a relevant consideration."); *Cf. Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 519-20 (N.D. Cal. 2010) (Koh, J.) ("If Defendants obtain credible evidence of abusive communications from Plaintiffs' counsel or named plaintiffs to putative class members, they may move for corrective action by the Court at that time.").

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

equities tips in their favor; and (4) that an injunction is in the public interest. *Toyo Tire Holdings Of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). "Under [the Ninth Circuit's] 'sliding scale' approach to evaluating the first and third *Winter* elements, [injunctive relief] may be granted when there are 'serious questions going to the merits and a hardship balance that tips sharply toward the [moving party],' so long as 'the other two elements of the *Winter* test are also met.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011)). A district court may consider hearsay and other inadmissible evidence in deciding whether to issue a TRO or preliminary injunction. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

> **2.    The Likelihood Of Success On The Merits Weighs In The Bank's Favor Because Wynne Committed Serious Misconduct In His Communications With PCMs**

A showing of likelihood of success on the merits to a certain degree is not required; rather, this factor is considered along with the overall analysis of a balance of hardship. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 526 F.2d 86, 88 (9th Cir. 1975). Where the potential harm to a party is "sufficiently serious," it is "only necessary that there be a fair chance of success on the merits." *Id.*

Here, the Bank has demonstrated a high likelihood of success on the merits because Wynne's communications with PCMs have been improper, coercive, and likely to interfere with the rights of the Bank and PCMs, thus warranting the issuance of a TRO. *See, e.g.*, *Grewe*, 2016 WL 4547131, at *3 (granting a TRO where the employer showed a high likelihood of success on the merits with respect to the issue of whether communications from intervenor's counsel to potential collective members who were also PCMs in another lawsuit he was prosecuting against the same employer dissuading them from opting into a class action settlement would interfere with the rights of the parties); *Estakhrian v. Obenstine*, No. CV 11-3480 FMO (CWX), 2017 WL 2661616, at *1 (C.D. Cal. June 20, 2017) (granting an *ex part*e application for a TRO where counsel's communications

with class members was "coercive, threatening and misleading" and interfered with their rights by "significantly increas[ing] the possibility that class members will opt out").

As discussed above, Wynne's conduct toward the Declarants was "coercive, threatening and misleading" because it was designed to intimidate them and deter them from exercising their rights to provide testimony in support of the Bank in this action, and in turn interfere with the Bank's right to present its defense through the testimony of PCMs.  Indeed, after Ms. Bostani told Wynne that she "volunteered" to sign her declaration in support of the Bank and "[stood] by every word," Wynne proceeded to harass Ms. Bostani and her family members with his persistent attempts to contact her in direct contravention of her stated wishes.[6]  Thus, there is a high likelihood that the Bank will succeed in demonstrating that Wynne committed serious misconduct warranting the Court's intervention.[7]  As such, this factor weighs heavily in favor of granting injunctive relief.

### 3.    The Bank And The Declarants Will Suffer Irreparable Harm Without A TRO

In *Arrendondo v. Delano Farms Co.*, No. CV F 09-1247 LJO DLB, 2010 WL 3212000, at *1 (E.D. Cal. Aug. 10, 2010), the defendant employer, Delano Farms, and its supervisors threatened employees and PCMs with termination and/or not being rehired for further work if they participated in the litigation.  In granting the TRO, the court reasoned that "there will be irreparable injury to the plaintiffs, putative class members, and potential witnesses involved" if the defendant and the supervisors "are permitted to continue their alleged party and witness intimidation and related conduct in that: (a) the plaintiff's prosecution of their case is likely to be chilled; (b) the plaintiff's investigation of their claims, and identification of class members, now pending against Delano Farms are likely to be chilled; (c) current Delano Farms employees are likely to be deterred from

---

[6] Ms. Bostani's declaration testimony is further evidence of why class certification is not appropriate here, as it shows that individualized inquiries are necessary for adjudication of the putative class action claims.  By his conduct, Wynne is attempting to silence such testimony in support of the Bank's MCC Opposition because he knows that it strongly demonstrates that class certification is not warranted.

[7] Further, a party cannot "defeat an order of injunctive relief through promises of voluntary cessation."  *AAMCO Transmissions, Inc. v. Dunlap*, No. 11-4009, 2015 WL 4476423, at *3 (E.D. Pa. July 22, 2015).

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

exercising their rights; and (d) the plaintiffs, putative class members and potential witnesses are likely to suffer damage." *Id.* at *3.

Although *Arrendondo* involved conduct by the employer defendant, the outcome should be no different where, as here, Wynne's intimidating and harassing communications with the Declarants on behalf of Plaintiffs has the potential effect of coercing the Declarants to retract their declaration testimony, thereby distorting the factual record before the Court, intimidating them from providing future testimony on behalf of the Bank in this action, compromising the integrity of the legal process, precluding the Court's and the parties' access to relevant information, and obstructing the Bank's right and ability to oppose class certification through the use of witness testimony.

Allowing Wynne to continue his campaign of intimidation and harassment toward the PCMs will result in irreparable harm to the Declarants, all of whom want Wynne to stop contacting them, and irreparable harm to the Bank and its right to defend itself against the wage and hour claims in this case. As such, the Bank has demonstrated a real and immediate threat of future harm unless the Court intervenes and places appropriate limitations on Wynne's communications with PCMs. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (holding that a movant must demonstrate real and immediate threat of future injury to meet the likelihood of irreparable injury factor); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (same); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Accordingly, this factor weighs heavily in favor of granting injunctive relief.

### 4.    The Balance Of The Equities Weighs In The Bank's Favor

The "balance of hardship tips sharply in . . . favor" of the Bank here. *See Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders Local Union 34 v. N. California Carpenters Reg'l Council*, 992 F. Supp. 1138, 1147 (N.D. Cal. 1997) (Henderson, J.) *aff'd sub nom. Local 34 Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders v. N. California Carpenters Reg'l Council*, 139 F.3d 905 (9th Cir. 1998). As addressed above, the Bank is likely to suffer irreparable harm due to Wynne's intimidating and coercive communications toward the Declarants, and such harm will continue if the Court does not grant the requested relief. On the other hand, any hardship that may result to Plaintiffs if limitations are placed on Wynne's communications with PCMs is heavily outweighed by the distress, fear, and annoyance his communications thus far have caused

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

the Declarants and possibly other PCMs.  *See Yvon v. City of Oceanside*, 202 F. Supp. 3d 1147, 1162 (S.D. Cal. 2016) ("The balance of equities inquiry requires the Court to 'balance the competing claims of injury and [to] consider the effect on each party of the granting or withholding of the requested relief.'") (quoting *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987)). To wit, Wynne's blatant refusal to respect the wishes of the Declarants who have explicitly refused to speak with him, incessant calls to the personal cell phones of other Declarants who have intentionally chosen to ignore his outreach attempts, and harassment of the family members of Declarants who have elected not to speak to him, demonstrates the improper lengths to which Wynne is willing to go to intimidate witnesses and prevent them from testifying in this action.[8] Restricting Wynne's communications with the Declarants and imposing additional preventative and corrective measures if it is revealed that he engaged in similar communications with other PCMs is necessary to prevent Wynne's harassing conduct, and this factor weighs strongly in favor of granting injunctive relief.

### 5.      An Injunction Will Serve The Public Interest

"The public interest analysis for the issuance of a preliminary injunction requires us to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Cal. Pharmacists Ass'n v. Maxwell–Jolly*, 596 F.3d 1098, 1114-15 (9th Cir. 2010) (internal quotations omitted).  Here, Wynne's right to free speech, the only public interest seemingly involved, is strongly outweighed by the PCMs' rights to be left alone and to not be intimidated for providing truthful testimony in this litigation.[9]  *Cf. Bobryk v. Durand Glass Manufacturing Co.*, No. 12-CV-5360, 2013 WL 5574504, at *5-6 (D.N.J. Oct. 9, 2013) (noting "the absence of a bright-line rule controlling pre-certification communications" requires courts to

---

[8] Additionally, as Wynne seeks to represent the interests of these PCMs if a class is certified, his behavior toward the Declarants is even more concerning because it necessarily raises the question of whether he coerced any of the PCMs into providing the declarations filed in support of Plaintiffs' MCC by engaging in similar behavior toward them.

[9] In any event, the Court can ameliorate any concerns regarding speech restraints by tailoring its order to avoid excessive restraint on speech.  *Gulf Oil*, 452 U.S. at 101 ("Any restrictive order should make specific findings of actual or potential abuse or misconduct, and sanctions or limitations on future communications should be narrowly tailored to avoid excessive restraint on speech.").

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

"assess[ ] whether the factual circumstances surrounding ex parte communications warrant the imposition of restrictions on speech"); *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D.N.Y. 1986) (injunction entered against perjurious communications by attorney to class members aimed at discouraging class members from participating or encouraging them to "opt out").

The PCMs' interest in being left alone includes the right to not be harassed or stalked. California Code of Civil Procedure § 527.6 defines "harassment," in part, as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."  Cal. Code Civ. Proc. § 527.6.  Similarly, California Code of Civil Procedure § 1708.7 defines "stalking" as "a pattern of conduct the intent of which was to follow, alarm, or harass" another, causing that person to "reasonably fear[] for his or her safety, or the safety of an immediate family member," and making a "credible threat with the intent to place the [person] in reasonable fear for his or her safety, or the safety of an immediate family member" despite the fact that the person demanded that the stalker cease this conduct.  Cal. Code Civ. Proc. § 1708.7.

Here, Wynne's conduct, which includes persistently contacting the Declarants using multiple means of communication, refusing to cease his contact attempts when asked to do so, contacting the Declarants' family members, and using threatening language to mislead witnesses to believe they will be subject to ramifications for providing truthful testimony in this action, is analogous if not tantamount to illegal harassment or stalking.

In sum, the requirements of Federal Rule of Civil Procedure 65(a) are satisfied so that the issuance of a TRO is not only appropriate but *necessary* to curtail the "potential interference" with the right of the Bank to mount a successful defense to Plaintiffs' claims and the rights of the Declarants to participate in this lawsuit free of harassment from Wynne.

///

///

///

///

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**

## IV.    CONCLUSION

For all of the foregoing reasons, the Bank respectfully requests that the Court grant the relief requested in this *ex parte* application, and/or such other relief as it deems just and proper.


DATED:  June 5, 2019                                    McGuireWoods LLP




                                                   By:   /s/ Matthew C. Kane
                                                         Matthew C. Kane
                                                         Michael D. Mandel
                                                         Sylvia J. Kim
                                                         John A. Van Hook
                                                         Lindsay L. Ryan
                                                         Ashley R. Li

                                                         Attorneys for Defendant
                                                         Bank of America, N.A.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 22, 2019, at Los Angeles, California.


_____ */s/ Matthew C. Kane* _____
MATTHEW C. KANE

**DEFENDANT'S *EX PARTE* APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER**