EDWARD J. WYNNE, SBN 165819
ewynne@wynnelawfirm.com
GEORGE R. NEMIROFF, SBN 262058
gnemiroff@wynnelawfirm.com
WYNNE LAW FIRM
Wood Island
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile:  (415) 461-3900

*Attorneys for Plaintiffs and the putative class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAURA LOPEZ, SAM WILLIS, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION and DOES 1 through 10, inclusive,<br><br>            Defendants. | **Case No. 18-cv-02346-VC**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR A NO CONTACT ORDER, PROTECTIVE ORDER, OR TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS

I. RELEVANT FACTS AND PROCEDURAL BACKGROUND ............................................. 2

    A. A Privacy Notice Was Sent to the Putative Class ....................................................... 2

    B. The Class Certification Proceedings ........................................................................... 3

    C. Plaintiffs' Counsel's Limited Contacts With Three Putative Class Members ............ 3

        1. John Moon ....................................................................................................... 3

        2. Ramona Bostani ............................................................................................... 4

        3. Greg Jewett ...................................................................................................... 4

        4. Wilbur Cabrera ................................................................................................ 4

    D. Defendant's Scant Evidence in Support of the Ex Parte Application (*Annotated*) ........................................................................................................... 4

        1. Declaration of John Moon ............................................................................... 4

        2. Declaration of Defense Counsel Ashley Li .................................................... 5

    E. Defense Counsel Notified Plaintiffs' Counsel of The "Emergency" Ex Parte Application 40 Minutes Before Filing ......................................................................... 7

II. LEGAL ARGUMENT ............................................................................................................ 7

    A. Plaintiffs' Counsel In No Way Abused, Coerced, Intimidated, Misled Or Did Anything Improper in Contacting the Declarants ....................................................... 7

        1. Legal Standard ................................................................................................. 7

        2. Defendant's Bad Faith Misrepresentations and Omissions of Evidence ......... 8

            a. The LinkedIn Message Sent To The Declarants Was Benign And In No Way Abusive, Coercive, Intimidating, Misleading Or Improper .................................................................................................. 8

            b. The Moon Declaration Contains A Material Misrepresentation ......... 8

            c. The Li Declaration Is Misleading and Omits Critical Evidence ......... 9

                i. Defense Counsel Omits Ms. Bostani's Conversation With Plaintiffs' Counsel In Bad Faith ..................................... 9

                ii. Defense Counsel Attributes Mr. Jewett's "Big Mistake" Comment To Plaintiffs' Counsel In Bad Faith ...................... 10

                iii. Defendant Does Not Present Credible Evidence Of A "Campaign" ......................................................................... 10

i

3. Class Counsel Is Fulfilling Its Duty to the Putative Class And Is Adequate ..................................................................................................10

    a. Defendant Filed The Frivolous Application To Vex, Harass and Annoy Plaintiffs' Counsel In the Preparation Of The Reply In the Class Certification Proceedings ......................................................10

    b. Defendant Filed The Frivolous Application To Manufacture Misconduct By Plaintiffs' Counsel ....................................................11

    c. Defendant Filed The Frivolous Application To Embarrass and Humiliate Plaintiffs' Counsel ............................................................11

B. Defendant Has Not Met Its Burden To Be Granted A TRO Because There Is No Evidence Whatsoever of Wrongdoing By Plaintiffs' Counsel ............................12

    1. Defendant Has No Likelihood Of Being Successful On The Merits ............12

    2. The Bank and the Declarants Have No Risk of Irreparable Harm ................13

    3. The Balance of Hardships Do Not Weigh In The Bank's Favor...................14

    4. An Injunction Will Not Serve The Public Interest .........................................14

C. Defendant Willfully Failed To Comply With Court's Standing Order Regarding Emergency Applications ................................................................14

D. The Court Should Issue Rule 11 Sanctions Under the Court's Inherent Authority ..........................................................................................................14

III.    CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arrendondo v. Delano Farms Co.*,
   No. CV F 09-1247 LJO DLB, 2010 WL 3212000 (E.D. Cal. Aug. 10, 2010) ........................ 13

*Chambers v. NASCO*,
   501 US 32, 43 (1991) ............................................................................................................ 15

*Chevron U.S.A., Inc. v. M & M Petroleum Servs.*,
   658 F.3d 948 (9th Cir. 2011) ................................................................................................ 12

*Estakhrian v. Obenstein*,
   No. CV 11-3480 FMO (CWX), 2017 WL 2661616 (C.D. Cal. June 20, 2017) .................... 13

*Grewe v. Cobalt Mortgage*,
   C16-577-JCC, 2016 WL 4547131 (W.D. Wash. Sept. 1, 2016) ........................................... 13

*Methode Electronics v. Adam Technologies,*
   371 F3d 923 (7th Cir. 2004) .................................................................................................. 15

*O'Connor, v. Uber Technologies,*
   2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) .......................................................................... 8

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 ........................................................................................................................ 15

*Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire Am, Inc.*,
   609 F.3d 975 (9th Cir. 2010) ................................................................................................ 12

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................................. 13

## STATE CASES

*Duran v. U.S. Bank National Assn.*,
   59 Cal.4th 1 (2014) .............................................................................................................. 12

*Parris v. Superior Court*,
   109 Cal.App.4th 285 (2003) ................................................................................................... 7

*Sav-On Drug Stores, Inc. v. Superior Court*,
   34 Cal.4th 319 (2004) .......................................................................................................... 12

## STATUTES, RULES & REGULATIONS

Fed. R. Civ. P.,
   Rule 11 ........................................................................................................................ 2, 14, 15

# INTRODUCTION

Defendant's Ex Parte Application is malicious, offensive, reckless, misleading and utterly frivolous. Defendant has violated the Court's standing order by bringing this Application without meeting and conferring prior to doing so and has made scurrilous accusations in a desperate and pathetic gambit to manufacture misconduct by Plaintiffs' counsel in an attempt to deflect this Court's attention from the Court-invited sanctions motion filed by Plaintiffs' counsel.

Plaintiffs' counsel attempted to contact only those putative class members who submitted declarations in support of Defendant's Opposition to Class Certification. The contacts were entirely benign. In a failed attempt to manufacture misconduct, Defendant has presented evidence rife with inadmissible hearsay, and materially misrepresents and/or omits critical information regarding Mr. Wynne's attempted contacts with these putative class members. Defendant's entire argument rests of just one class member declaration and a hearsay-riddled declaration of defense counsel Ashley Li.

John Moon stated that he was "aggravated" by Plaintiffs' counsel's attempts to contact him. Mr. Moon, however, omits a significant fact. <u>Mr. Moon accepted Plaintiffs' counsel's LinkedIn friend request</u>. Moreover, Mr. Wynne did not know that he had accidentally called Mr. Moon's mother when he left a voicemail message for Mr. Moon. Mr. Wynne never spoke to Mr. Moon.

Ramona Bostani did not submit a declaration. Instead, defense counsel Ashley Li improperly testifies for her. Ms. Li attaches an email where Ms. Bostani concludes she is being harassed by Plaintiffs' counsel. Bostani also omits a critical fact. <u>Ms. Bostani fails to divulge that she had a cordial 15-minute phone call with Mr. Wynne</u>. Defense counsel does not even try to characterize the brief call Mr. Wynne had with Ms. Bostani's mother because the entire exchange consisted of Ms. Bostani's mother offering to pass along a message to her daughter with Mr. Wynne's name and number.

Gregory Jewett and Mr. Wynne spoke for less than 30 seconds after Mr. Jewett indicated he did not want to speak with Mr. Wynne. Defense counsel then attributed the phrase "big mistake" to Mr. Wynne when Ms. Li's declaration clearly reflects it was Mr. Jewett's words (or more likely defense counsel's). The phrase is then repeatedly misrepresented throughout the Application.

Plaintiffs' counsel never spoke with John Moon, Wilbur Cabrera or Luis Navarro.

Significantly, not one of these individuals opted-out via the privacy notice. By not opting-out there was a distinct possibility they would be contacted in this litigation. Indeed, by injecting themselves into this litigation at the behest of their current employer, it was a near certainty that they would be contacted by Plaintiffs' counsel. Defendant concedes that there is nothing inherently improper about Plaintiffs' counsel contacting these individuals. Plaintiffs' counsel was fulfilling his

duties to prosecute this case on behalf of the putative class and Defendant has presented no evidence that he abused, coerced, mislead or did anything improper to the SBBs he attempted to contact.

The circumstances surrounding the filing of the Application is further evidence that the Application was filed in bad faith. Plaintiffs' counsel had ceased attempting to contact any of the putative class members as of May 29, 2019. Defense counsel filed the Application a week later on June 5, 2019. By then, Defense counsel must have known that Plaintiffs' counsel had ceased attempting to contact these putative class members yet filed it anyway. The Application repeatedly speaks to a "campaign" while implying that defense counsel cannot know the full extent of Plaintiffs' counsel's activities. Defendant only had five declarants. There was no "campaign."

Defense counsel could have learned of the extent of Plaintiffs' counsel's contacts if they had simply reached out to Plaintiffs' counsel -- something they have failed to do throughout this litigation. Defense counsel was not interested in finding the truth. They wanted to deflect the Court's attention from their own sanctionable conduct in ignoring not one, but *two*, of this Court's orders.

Defense counsel made a "big mistake" by filing the Application and it should be denied in its entirety. Defendant and its counsel's actions warrant the full measure of this Court's inherent disciplinary authority under Rule 11. Plaintiffs served Defendant with a proposed Rule 11 motion on June 14, 2019 pursuant to Fed. R. Civ. P. Rule 11(c)(2). (Declaration of Edward J. Wynne ("Decl. of Wynne"), ¶ 2, Ex. 1.) Plaintiffs will file their Rule 11 Motion at the Court's invitation.

### I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

#### A. A Privacy Notice Was Sent to the Putative Class

On December 14, 2018, a third-party administrator sent a privacy notice to the putative class of Small Business Bankers ("SBB(s)"). (Decl. of Wynne, ¶ 3, Ex. 2.) The first paragraph of the notice makes clear why the PCM received the notice:

> This letter is notify you that Ms. Lopez and Mr. Willis' attorneys in the above-captioned case are seeking to obtain your name, home address, personal email address and home telephone number (if available) so that they may communicate with you about the allegations made in the lawsuit brought by Plaintiffs. It is entirely your choice whether or not to have your personal contact information disclosed to Plaintiffs' attorneys. (Id.)

The privacy notice explains the nature of the claims of the action and the parties' respective contrary positions. (Id.) The last substantive portion of the privacy notice states:

> You are entitled to object to Plaintiffs' attorneys receiving your name, home address, personal email address and home telephone number(s). **If you do not note your objection by completing and returning the enclosed postcard, BofA will provide**

2

**your personal contact information (to the extent BofA has this information), and you may be contacted by Plaintiffs' counsel.** Whether or not you return the postcard or otherwise respond to this letter, in the event you are contacted by counsel, you are under no obligation to provide information to or discuss this lawsuit with attorneys for either Plaintiffs or Defendant. (Id.)

After identifying Plaintiffs' counsel, the privacy notice concludes by informing the putative class member of their privacy rights to keep their contact information private:

> **IF YOU DO NOT WANT YOUR NAME, HOME ADDRESS, EMAIL ADDRESS AND TELEPHONE NUMBER TO BE PROVIDED TO PLAINTIFFS OR THEIR ATTORNEY, YOU MUST COMPLETE AND RETURN THE ENCLOSED POSTCARD. IT MUST BE MAILED BY JANUARY 14, 2019.**
> **IF YOU RETURN THE POSTCARD, YOUR CONTACT INFORMATION WILL NOT BE DISCLOSED BY BANK OF AMERICA TO PLAINTIFFS' COUNSEL.** (Id.)

Ramona Bostani, Wilbur Cabrera, Gregory Jewett, John Moon and Luis Navarro were sent the privacy notice and did not opt-out. As a result, Plaintiffs' counsel received their contact information from Defendant. (Decl. of Wynne, ¶ 4.)

**B. The Class Certification Proceedings**

On April 25, 2019 Plaintiffs' counsel asked the Court to impose evidentiary sanctions against Defendant for violation of two court orders. [Dkt. 55.] On April 30, 2019, the Court denied Plaintiffs' informal request for sanctions, without prejudice to Plaintiffs' filing a noticed motion seeking sanctions. [Dkt. 56.]

On May 1, 2019, Plaintiffs filed their Motion for Class Certification. [Dkt. 58.] On May 8, 2019, Plaintiffs filed their Motion for Sanctions. [Dkt. 61.]

On May 22, 2019, Defendant filed its Opposition to the Motion for Class Certification supported by declarations from Ramona Bostani, Wilbur Cabrera, Gregory Jewett and John Moon. [Dkt. 63, 63-4, 63-5, 63-6, 63-7.] Plaintiffs' Reply in the class certification proceedings was filed on June 12, 2019.

**C. Plaintiffs' Counsel's Limited Contacts With Three Putative Class Members**

Plaintiffs' counsel obtained the contact information for the Declarants pursuant to the privacy notice procedures. (Decl. of Wynne, ¶ 4.) Plaintiffs' counsel has the capability to search for updated contact information. (Id., ¶ 5.)

**1. John Moon:** On May 24, Plaintiffs' counsel located Moon on LinkedIn and sent him a connection request. (Decl. of Wynne, ¶¶ 6-7.) <u>Moon accepted the request.</u> (Id., ¶ 8. Ex. 3.) On or about May 28, 2019, Plaintiffs' counsel attempted to contact Moon. Plaintiffs' counsel was only able

3

to reach a non-personalized voicemail and left a message for Moon identifying himself and requesting to speak with him. (Id., ¶ 9.) On or about May 29, 2019, Plaintiffs' counsel attempted to contact Moon using different contact information and reached a voicemail where Plaintiffs' counsel identified himself and left a message requesting that he contact Plaintiffs' counsel. (Id., ¶ 10.) Plaintiffs' counsel never spoke to Moon and did not attempt to contact him again before the filing of the Application on June 5, 2019. (Id.)

2. **Ramona Bostani:** On or about May 29, 2019, Plaintiffs' counsel attempted to contact Bostani. (Decl. of Wynne, ¶ 11.) Plaintiffs' counsel called a number and reached Bostani's mother. He identified himself and explained why he was calling. Ms. Bostani's mother offered to give her daughter the message. The entire conversation was completely benign and lasted approximately two minutes. (Id.) That same day, Plaintiffs' counsel called another telephone number for Bostani and she answered the call. Plaintiffs' counsel had a conversation with Bostani about her experience as an SBB for BofA. The telephone conversation was unremarkable and completely benign. It lasted for approximately 15 minutes. After speaking with her, Plaintiffs' counsel did not attempt to further contact her before the filing of the Application. (Id., ¶ 12.)

3. **Greg Jewett:** On or about May 27, 2019, Plaintiffs' counsel attempted to contact Jewett. Plaintiffs' counsel reached Jewett who informed him that he did not want to speak with him. The entire call lasted less than 30 seconds. After speaking with Jewett, Plaintiffs' counsel did not attempt to further contact him before the filing of the Application. (Decl. of Wynne, ¶ 13.)

4. **Wilbur Cabrera:** On or about May 27, 2019, Plaintiffs' counsel attempted to contact Cabrera. Plaintiffs' counsel reached a voicemail inbox and left a message for Cabrera identifying himself and requested that he return the call. Plaintiffs' counsel never spoke to Mr. Cabrera. Plaintiffs' counsel did not attempt to contact him again before the filing of the Application. (Decl. of Wynne, ¶ 14.)

**D. Defendant's Scant Evidence in Support of the Ex Parte Application (*Annotated*)**

The Application is supported by just two declarations. Plaintiffs annotate the statements.

1. **Declaration of John Moon**

"3.   On May 24, 2019, Edward Wynne at Wynne Law Firm contacted me via LinkedIn. A copy of Mr. Wynne's LinkedIn message to me is attached as Exhibit 1. I chose not to respond to Mr. Wynne's LinkedIn message because I do not wish to speak with him." [*Mr. Moon's statement is demonstrably false. Mr. Moon did in fact respond to Mr. Wynne's LinkedIn message because* **he accepted Mr. Wynne's contact request.** *(Ex. 3, Decl. of Wynne.) Mr. Moon omits this material fact from his declaration.*]

"4.     On either May 27 or May 28, 2019, Mr. Wynne called my mother and left an aggravated voicemail message on her personal cellphone. [*Mr. Wynne never talked to Mr. Moon's mother. Additionally, Mr. Wynne had no idea the number associated with Mr. Moon was in fact his mother's as there was no identifying information on the voicemail recording. Moreover, Mr. Moon's subjective belief of his mother's interpretation of a voicemail message is not admissible evidence and, even assuming its veracity, such an impression does not arise to a level warranting judicial intervention*] Mr. Wynne's message caused my mother a great deal of confusion, as English is not her first language and caused some confusion as to why she was being contacted. [*In addition to not knowing that Mr. Moon's mother used the telephone number associated with him, her apparent confusion due to her language issue does not equate to any conceivable violation on Plaintiffs' counsel's part.*] Mr. Wynne said on the voicemail that he represented SBBs and was attempting to contact me about the legal ramifications of the declaration that I provided for the Bank and wanted to make sure that I understood what I signed. He requested that I return his call." [Dkt. 67-1, ¶ 4.] [*A truthful and completely reasonable voicemail message to leave a witness who has injected himself into the litigation as a witness on behalf of his employer.*]

"5.     On May 29, 2019, Mr. Wynne left me a voicemail on my personal cell phone. Again, Mr. Wynne's voicemail message said that he wished to speak with me about the legal ramifications of my declaration and whether I understood the consequences of what I signed. He requested that I contact him." [Dkt. 67-1, ¶ 5.] [*A single follow-up call with another completely truthful and reasonable voicemail to leave a witness who has injected himself into this litigation on behalf of his employer.*]

"6.     I have not responded to any of Mr. Wynne's attempts to contact me. [*False. Mr. Moon accepted Mr. Wynne's LinkedIn invitation.*] I am aggravated by Mr. Wynne's attempts to contact me, and I want him to stop. [*Mr. Wynne never had a telephone conversation Mr. Moon. By the time this declaration was executed, Plaintiffs' counsel had already ceased attempting to contact Mr. Moon. Moreover, Mr. Moon's feelings are subjective and vague and, even assuming the veracity, such a feeling does not arise to a level warranting judicial intervention*] *(*Decl. of Wynne, ¶ 15.)] [Dkt. 67-1, ¶ 6.]

**2. Declaration of Defense Counsel Ashley Li**

"2.     On May 24, 2019, I was contacted by John Moon, Gregory Jewett, and Wilber Cabrera, all of whom are Small Business Bankers ("SBBs") employed by Defendant who provided declarations in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification ("MCC") [Dkt. 63.], regarding Plaintiffs' counsel Edward Wynne's attempts to contact them. [*Inadmissible hearsay.*] I informed Mr. Moon, Mr. Jewett and Mr. Cabrera that they were free to speak with Wynne or not to speak with him. [*Defense counsel clearly acknowledges that Plaintiffs' counsel can speak with putative class members and there is no indication that the communication via LinkedIn was harassing or threatening in any way.*] I further informed them that there would be no retaliation by the Bank or risk to their jobs if they chose to speak to Wynne, and that there would be no reward or favorable treatment by the Bank if they chose not to speak with Wynne." [*Defense counsel is testifying to this disclaimer*

5

*in order to lessen the appearance of impropriety in the filing of a frivolous Application.*] [Dkt. 67-3, ¶ 2.]

"3.     Mr. Jewett informed me that Wynne sent him a LinkedIn message implying that Mr. Jewett made a "big mistake" in providing a declaration on the Bank's behalf and that Wynne subsequently proceeded to call Mr. Jewett at work. [*Inadmissible hearsay. Mr. Wynne never used the phrase "big mistake" in any of his communications. This quote is from Mr. Jewett. Mr. Wynne had no idea where Mr. Jewett was when he called him.*] Mr. Jewett also informed me that he advised Wynne that he did not want to be contacted by him. [*Inadmissible hearsay. Mr. Wynne's conversation was about 15 seconds in length consisting of Mr. Wynne identifying himself and stating the purpose of his call and Mr. Jewett stating the he did not want to talk to Mr. Wynne. Mr. Wynne made no further attempts to contact Mr. Jewett after he declined to speak to Plaintiffs' counsel.* (Decl. of Wynne, ¶ 13.)] [Dkt. 67-3. ¶ 3.]

"4.     Mr. Cabrera informed me that Wynne messaged him on LinkedIn and attempted to add him as a friend on LinkedIn. [*Inadmissible hearsay. Also, LinkedIn profiles are public; any person with a LinkedIn account can send a friend request to any other person on LinkedIn.*] Marked and attached hereto as Exhibit 1 is a true and correct copy of the screenshot Mr. Cabrera sent me reflecting Wynne's message sent to him via LinkedIn. [*Plaintiffs' counsel's LinkedIn message attached as Exhibit 1 is benign and in no way harassing or threatening.*] Mr. Cabrera further informed me that Wynne also called Cabrera's personal cell phone and left him a voicemail message. [*Attempting to contact someone by two means is not unusual and Plaintiffs' counsel only left a voicemail message. There is no allegation that the voicemail message was harassing, intimidating or threatening in any way.*] Based on my discussions with Mr. Cabrera, it is my understanding that he has chosen to ignore Wynne's messages. [*Mr. Wynne has never had a conversation with Mr. Cabrera and Plaintiffs' counsel has not tried to contact Mr. Cabrera since leaving the voicemail.* (Decl. of Wynne, ¶ 14.)] [Dkt. 67-3. ¶ 4.]

"5.     On May 24, 2019, Ramona Bostani contacted my firm regarding Wynne's efforts to contact her via LinkedIn. [*Contacting someone on LinkedIn is not improper.*] Ms. Bostani was advised that she is free to speak to Wynne or not to speak to him. [*See above.*] Ms. Bostani was further advised that there will be no retaliation by the Bank or risk to her job if she chooses to speak to him, and that there will be no reward or favorable treatment by the Bank if she chooses not to speak to him. [*See above.*] [Dkt. 67-3. ¶ 5.]

"6.     On May 30, 2019, Ms. Bostani contacted my firm again via email regarding her concerns about Wynne's continued attempts to contact her, including calling her mother. [*Mr. Wynne had no idea the number he called which was associated with Ms. Bostani was her mother's telephone number. Ms. Bostani's mother answered the call. Mr. Wynne explained who he was and why he was calling Ms. Bostani. Ms. Bostani's mother offered to pass a message onto her daughter on behalf of Mr. Wynne and Mr. Wynne agreed. The conversation was completely benign and lasted approximately two minutes.*] Marked and attached hereto as Exhibit 2 is a true and correct copy of Ms. Bostani's May 30, 2019 email to my firm and the

attachment thereto, which transmitted a screenshot of her communications with Wynne via LinkedIn. [*Regarding Exhibit 2, Ms. Bostani's screenshot email to Defense counsel supports that Plaintiffs' counsel contacted her mother by accident. Ms. Bostani also acknowledges that she had a call with Plaintiffs' counsel. The call lasted approximately 15 minutes which undermines her claim that she was being harassed, intimidated or threatened in any way.* (Decl. of Wynne, ¶ 9.) *Her claim that she is being harassed is subjective, conclusory and legally incorrect. Mr. Wynne has not attempted to contact Ms. Bostani since they last spoke on May 29, 2019*. (Decl. of Wynne, ¶ 12.)]

### E. Defense Counsel Notified Plaintiffs' Counsel of The "Emergency" Ex Parte Application 40 Minutes Before Filing

At 5:50 p.m. on June 5, 2019, Defense counsel Ashley Li sent Plaintiffs' counsel an email notifying them that Defendant would be filing the Ex Parte Application. [Dkt. 67-3, Ex. 3.] Defense counsel then filed the 25-page Ex Parte Application roughly forty minutes later at 6:29 p.m. [Dkt. 67.] At no point prior to filing did Defense counsel give notice or otherwise meet and confer regarding the Application contrary to this Court's Civil Standing Order. (Decl. of Wynne, ¶¶ 16-17.)

## II. LEGAL ARGUMENT

The bad faith of Defendant's Ex Parte Application is astounding. Defendant violated the Standing Order in order to make a surprise filing as Plaintiffs prepared the Reply in the class certification proceedings. Defense counsel knew that Plaintiffs' counsel's contacts with the four putative class members were entirely benign and in no way abused, misled, coerced any of them or their families. Furthermore, defense counsel knew that Plaintiffs' counsel had ceased attempting to contact the Declarants as of May 29, 2019, yet nevertheless filed this frivolous Application anyway.

### A. Plaintiffs' Counsel In No Way Abused, Coerced, Intimidated, Misled Or Did Anything Improper in Contacting the Declarants

#### 1. Legal Standard

Defendant does not argue that Plaintiffs' counsel is barred from communicating with putative class members at the pre-certification stage. There is no dispute that Plaintiffs' counsel may contact PCMs as part of his prosecutorial duties to the putative class. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981); *Parris v. Superior Court*, 109 Cal.App.4th 285, 292 (2003). There must be "a clear record and specific findings that reflect a weighing of the need for a limitation and potential interference with the rights of the parties." *Gulf Oil Co. supra*, 452 U.S. at 101-102. "[T]he touchstone under Rule 23(d) is … whether the communication is abusive, misleading, coercive or otherwise affects the administration of justice in the context of a putative class action lawsuit. *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013). Defendant has failed to present

any evidence of abusive, misleading, coercive or otherwise inappropriate behavior on Plaintiffs' counsel's part.

### 2. Defendant's Bad Faith Misrepresentations and Omissions of Evidence

Each one of the Declarants did not opt-out from having their contact information disclosed to Plaintiffs' counsel pursuant to the privacy notice. By not opting out, there was a distinct possibility that they would be contacted by Plaintiffs' counsel at some point in the litigation. Once they signed declarations in support of Defendant's Opposition injecting themselves into the litigation, it was a near certainty. Plaintiffs' counsel contacted these individuals for no other reason than to fulfill his prosecutorial duties to Plaintiffs and the putative class.

#### a. The LinkedIn Message Sent To The Declarants Was Benign And In No Way Abusive, Coercive, Intimidating, Misleading Or Improper

A cursory review of Defendant's evidence in support of its Application reveals the extent of Defendant's bad faith. There is no credible evidence that Plaintiffs' counsel abused, harassed, coerced mislead or did anything improper in contacting the Declarants. As to all of the Declarants, Plaintiffs' Counsel sent the following email to the Declarants via LinkedIn:

> I am the attorney representing the SBBs in the BofA SBB overtime case. I see that you signed a declaration for your employer. I can understand why you may have felt compelled to do so. I would like to discuss the ramifications of that declaration with you and understand what you believe you were signing. You can call me on a confidential basis. Ed Wynne.

Defendant's characterization of this message as abusive, coercive, misleading or improper is groundless. Plaintiffs' counsel identified the party he represented, recognized that the SBBs may have felt pressure by their employer due to the inherently unequal bargaining position, and offered to confidentially speak with them about the consequences of signing the declaration.

Defendant repeatedly emphasizes that Plaintiffs' counsel's use of the word "ramifications" is somehow threatening, intimidating or misleading. A putative class member signing a declaration under penalty of perjury in federal litigation that is adverse to his/her interests and those of his/her colleagues clearly does have ramifications. Moreover, there is no evidence that any putative class member found the word "ramifications" intimidating, threatening, misleading. Defense counsel's attempt to twist a truthful statement into something that it is not fails.

#### b. The Moon Declaration Contains A Material Misrepresentation

Mr. Moon's declaration states that "[o]n May 24, 2019, Edward Wynne of Wynne Law Firm contacted me via LinkedIn . . . I chose not to respond to Mr. Wynne's LinkedIn message because I do not wish to speak with him." (Dkt. 67-1, ¶ 3.) <u>Mr. Moon critically omits that that same day he was</u>

8

contacted on LinkedIn, he accepted Plaintiffs' counsel's LinkedIn connection request. (Decl. of Wynne, ¶ 8, Ex. 3.) The acceptance is critical because it completely undermines Defendant's and Mr. Moon's claims that he did not want to be contacted by Plaintiffs' counsel. By accepting the connection request, Mr. Moon's *chose* to make himself more accessible. Mr. Moon's statement about the accidental allegedly "aggravated" voicemail left on his mother's phone by Plaintiffs' counsel is inadmissible hearsay. (Dkt. 67-1, ¶ 4.) In the Application, Defendant strains to make "aggravated" into something nefarious; however, Mr. Wynne never even had a telephone conversation with Mr. Moon or his mother. Mr. Moon concludes his declaration by stating that he did "not respond to any of Mr. Wynne's attempts to contact [him]." (Id., ¶ 6.) This is a false statement because he did respond by accepting the connection request on LinkedIn. Mr. Moon can only go so far as to say that he was "aggravated." (*Id*.) Even if this is true, Mr. Moon's "aggravation" does not rise to the level of abuse, coercion, or subterfuge.

### c.  The Li Declaration Is Misleading and Omits Critical Evidence

The Li Declaration consists entirely of inadmissible hearsay. The evidence contained in Ms. Li's Declaration is misrepresented throughout the Application and omits critical facts.

### i.  Defense Counsel Omits Ms. Bostani's Conversation With Plaintiffs' Counsel In Bad Faith

Ms. Li testifies that Ms. Bostani first contacted defense counsel regarding Plaintiffs' counsel's LinkedIn message on May 24, 2019. Six days later, Ms. Bostani contacted defense counsel on May 30, 2019, claiming that Plaintiffs' counsel had contacted her mother. Plaintiffs' counsel contacted Ms. Bostani's mother by accident. (Decl. of Wynne, ¶ 11.) Ms. Bostani does not characterize the nature of Plaintiffs' counsel's contact with her mother because it was completely benign. It amounted to Ms. Bostani's mother offering to pass along a message to her daughter and nothing more. Moreover, the attached email message from Ms. Bostani to defense counsel states that she spoke to Plaintiffs' counsel, though she does not characterize the conversation she had, before concluding that "[t]his is "harassment!" (Dkt. 67-5 (Ex. 2).) Defense counsel then asserts Plaintiffs' counsel harassed class members.

Defense counsel omits that on May 29, 2019, Ms. Bostani and Plaintiffs' counsel had a perfectly normal and professional conversation for approximately 15 minutes. (Decl. of Wynne, ¶ 12.) The fact that this single conversation occurred completely undercuts her claims of harassment and/or intimidation. If she was truly being harassed and/or intimidated, she would not have spoken Plaintiffs' counsel at all, let alone for 15 minutes. Defense counsel concealed this fact because it completely

undermines Defendant's narrative. This omission was in bad faith. The fact that Ms. Bostani did not provide a declaration highlights this intentional omission

### ii. Defense Counsel Attributes Mr. Jewett's "Big Mistake" Comment To Plaintiffs' Counsel In Bad Faith

Defense counsel repeatedly misrepresents evidence related to Gregory Jewett and the "big mistake" comment throughout the Application. Ms. Li's declaration states, <u>"Mr. Jewett informed me that Wynne sent him a LinkedIn message implying that Mr. Jewett made a "big mistake" in providing a declaration on the Bank's behalf</u> and that Wynne subsequently proceeded to call Mr. Jewett at work." (Dkt. 67-3, ¶ 3, emph. added.) It is clear that it was Mr. Jewett (or Ms. Li more likely) who said "big mistake," yet defense counsel repeatedly and intentionally misrepresents that it was Plaintiffs' counsel that uttered that phrase in order to buttress their claims of intimidation and harassment. [Dkt. 67, p. 1 (e.g., "Wynne told these PCMs that …they had made a "big mistake" …").] Defense counsel's intentional misrepresentation of the facts is bad faith.

### iii. Defendant Does Not Present Credible Evidence Of A "Campaign"

Ms. Li's declaration does not contain any material facts regarding declarants, Wilbur Cabrera and John Moon, only that they received Plaintiffs' counsel's LinkedIn message. (Dkt. 67-3, ¶¶ 2, 4.) Plaintiffs' counsel never actually spoke to any of these individuals. (Decl. of Wynne, ¶¶ 10, 14.) Defendant, nevertheless, alleges Plaintiffs' counsel embarked on a "campaign" to harass and intimidate Defendant's declarants. (Dkt. 67, p. 1.) Plaintiffs' counsel only attempted to contact the five declarants who submitted declarations in support of Defendant's Opposition to class certification and ended up speaking to only two. Plaintiffs' counsel's limited attempts at communicating with just five declarants cannot reasonably be characterized as a "campaign." Regardless, no one at Wynne Law Firm has attempted any class member contacts beyond Defendant's disclosed declarants since the motion for class certification was filed. (Decl. of Wynne, ¶ 15.).

**3. Class Counsel Is Fulfilling Its Duty to the Putative Class And Is Adequate**

Defendant filed the Application for three improper reasons: (1) Defendant sought to vex, harass and annoy Plaintiffs' counsel in the preparation of the Reply in the class certification proceedings; (2) Defendant sought to manufacture misconduct by Plaintiffs' counsel in order to deflect the Court's attention as it considers Plaintiffs' Court-invited motion for sanctions; and (3) Defendant wanted to "settle scores" by attempting to hold Plaintiffs' counsel out to public scrutiny and scorn, even going so far as to actually allege criminal acts of harassment and stalking.

### a. Defendant Filed The Frivolous Application To Vex, Harass and Annoy Plaintiffs' Counsel In the Preparation Of The Reply In the Class Certification Proceedings

Plaintiffs' Reply was due on June 12, 2019. Defendant filed the Application seeking emergency relief, in violation of the Court's order, seeking a no contact order, a protective order or a TRO. In seeking preliminary relief, Defendant knew that Plaintiffs' counsel would likely have to address it immediately. On June 6, 2019, the Court notified the parties that Plaintiffs' Opposition to the Application would be due on June 11, 2019, the day before the Reply was due. The timing of the Application filing suggests an improper purpose.

On June 6, 2019, Plaintiffs' counsel undertook preparing an administrative motion requesting a short six-day continuance. Pursuant to the Northern District's Local Rules, Plaintiffs inquired whether Defendant would stipulate to the extension. (Decl. of Wynne, ¶¶ 18-20, Ex. 5.) Since Plaintiffs' counsel had already ceased trying to contact the declarants, he represented that they had no intention of contacting the Declarants so there would be no prejudice to the parties. Defense counsel responded and refused to stipulate citing to undefined misconduct. (Id., ¶ 20, Ex. 5.) Because Plaintiffs' counsel's had already ceased attempted communications, the representation should have sufficed to assuage Defendant. Defendant's failure to stipulate reveals Defendant and defense counsel's true agenda. Defendant and Defense counsel wanted to harass, vex and annoy Plaintiffs' counsel in the class certification proceedings by making them respond to the frivolous Application.

### b. Defendant Filed The Frivolous Application To Manufacture Misconduct By Plaintiffs' Counsel

The Application is a desperate and pathetic attempt to deflect this Court's attention from the Court-invited motion for sanctions. Defense counsel made reference to undefined misconduct by Plaintiffs' counsel as a reason for refusing to stipulate; however, defense counsel never identified the alleged misconduct. This is hardly surprising as Plaintiffs have not engaged in any misconduct with respect to underlying facts giving rise to the Application or in this litigation as a whole. (Decl. of Wynne, ¶ 21.) Until this frivolous Application was filed, Defendant had raised no issues regarding Plaintiffs' counsel's conduct. (Id.) Throughout this litigation Plaintiffs' counsel has consistently met his obligations to the Court and Defendant while defense counsel has repeatedly violated the Court's orders causing severe prejudice to the Plaintiffs.

### c. Defendant Filed The Frivolous Application To Embarrass and Humiliate Plaintiffs' Counsel

Defendant began the Application with a hypothetical. Plaintiffs have their own: What would this Court do if it learned that a party filed a frivolous motion with no appreciable evidence in a meritless attempt to stave off evidentiary and monetary sanctions by insinuating that the other party's counsel committed criminal acts against putative class members? That is exactly what has happened

here.

"A frivolous [pleading] is one that is groundless … with little prospect of success; often brought to embarrass or annoy the [target]." *Chevron U.S.A., Inc. v. M & M Petroleum Servs.*, 658 F.3d 948, 952 (9th Cir. 2011). Defendant's Application is inflammatory, offensive, malicious, false, misleading, and warrants the full measure of this Court's disciplinary authority. Defense counsel has accused Plaintiffs' counsel of engaging in criminal harassment and stalking. Defense counsel cites to the California Code provisions defining these criminal acts and argue that issuance of the TRO *in this case* serves the public interest. These false allegations are malicious and incendiary and the Court should not tolerate this reckless behavior.

Plaintiffs' counsel has been a successful litigator for over 25 years and has built his professional reputation through hard work on behalf of class members, while litigating landmark California Supreme Court cases in the area of complex wage and hour class litigation. See *Duran v. U.S. Bank National Assn.*, 59 Cal.4th 1 (2014); see also, *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319 (2004). Defendant's filing is malicious, slanderous and hurts Plaintiffs' counsel and his firm's reputation. *That* was defense counsel's intent. The legal press picked up the Application's filing and published an article to the legal community nationally outlining Defendant's scurrilous allegations of harassment of putative class members.[1] Notwithstanding the fact that there is no evidence that Plaintiffs' counsel engaged in any harassing, coercive or otherwise unethical behavior, Plaintiffs' counsel cannot un-ring the bell of this bad press.

It is, in fact, Defendant that made a "big mistake" by filing the Application and the Court should sanction Defendant and its counsel for this outrageous conduct.

**B. Defendant Has Not Met Its Burden To Be Granted A TRO Because There Is No Evidence Whatsoever of Wrongdoing By Plaintiffs' Counsel**

Parties seeking injunctive relief must show that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities in their favor; and (4) that an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire Am, Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).)

**1. Defendant Has No Likelihood Of Being Successful On The Merits**

Defendant relies on inapposite authority. In *Grewe v. Cobalt Mortgage*, 2016 WL 4547131

---

[1] Mike LaSusa, Law360, "BofA Says Plaintiff Firm Is Harassing Its Workers in OT Battle", June 6, 2019 (Decl. of Wynne, ¶ 22, Ex. 6)

12

(W.D. Wash. 2016), the court issued a TRO after counsel representing the intervenor sent letters found to be misleading or improper to class members during the pendency of the notice process. In *Estakhrian v. Obenstein*, 2017 WL 2661616 (C.D. Cal. 2017), the court issued a TRO when the Defendant sent a blast email out to putative class members offering to settle with the first 263 for $1,000 apiece. Neither of those situations are remotely similar to the case at bar.

Defendant has not presented any evidence of wrongdoing by Plaintiffs' counsel. Defendant's entire argument concerns *only* Ms. Bostani. The evidence related to Ms. Bostani consists of inadmissible hearsay that the Court should reject and material omissions regarding Plaintiffs' counsel's conversation with her and the message left with her mother.

Defendant argues that the Bank may suffer harm as a result of Plaintiffs' counsel interfering with "the Bank's right to present its defense through the testimony of PCMs." Questioning a witness is not interference – it is one of the corner stones of our legal system and embodied in the Sixth Amendment. Defendant's argument here is simply nonsense.

**2. The Bank and the Declarants Have No Risk of Irreparable Harm**

Even Defendant acknowledges its own authorities are inapposite. *Arrendondo v. Delano Farms Co.*, 2010 WL 3212000 (E.D. Cal. 2010) involved an employer engaging in a campaign to intimidate putative class members from participating in the action. That is not the case here as there was no "campaign." Plaintiffs' counsel only attempted to contact five individuals. By submitting declarations, these individuals injected themselves into the litigation which of course prompted Plaintiffs' counsel to investigate.

Of those who were contacted, Defendant could only obtain one "fly-weight" declaration from Mr. Moon who never even spoke to Mr. Wynne. The best defense counsel came up with is to have him say that he felt "aggravated" by Plaintiffs' counsel's attempts to contact him – *after he accepted Mr. Wynne's LinkedIn connection request*. Ms. Bostani did not submit a declaration. The evidence pertaining to her materially omits that she had a cordial, 15-minute conversation with Plaintiffs' counsel which clearly undermines Ms. Bostani's claim of harassment. Defendant simply has no evidence that any putative class member ever suffered any harm at any point in their contacts with Plaintiffs' counsel.

Underscoring the lack of merit to the Application, the relief being sought was moot at time of its filing. Plaintiffs' counsel had already ceased trying to contact the Declarants. Plaintiffs' counsel's last contacted one of the Declarants on May 29, 2019. Plaintiffs' counsel did not try to contact the Declarants after that, nor did they intend to contact the Declarants at a later date.

### 3. The Balance of Hardships Do Not Weigh In The Bank's Favor

The balance of hardships weighs in Plaintiffs' favor. From Defendant's perspective, if the TRO is granted, nothing would change. Plaintiffs' counsel would still not be contacting the Declarants. Conversely, if the TRO is granted, Plaintiffs' counsel would be barred from contacting any putative class members – not just those who Defendant obtained a declaration from. This relief is excessive, unwarranted and not tied to the meritless claims of abuse. The relief requested is also absurd on its face. When class certification is granted as it will be, the class members will be Plaintiffs' counsel's clients after the opt-out period has expired. A blanket no contact order between an attorney and his or her client would be a clear violation of due process. The balance of hardships clearly weighs in Plaintiffs' favor.

### 4. An Injunction Will Not Serve The Public Interest

An injunction will not serve the public interest because Defendant's Application is frivolous. The public interest is not served by Defendant's scurrilous accusations that Plaintiffs' counsel has engaged in criminal harassment and stalking. The Court should exercise its inherent authority under Rule 11 and sanction Defendant and its counsel for presenting these scurrilous arguments.

## C. Defendant Willfully Failed To Comply With Court's Standing Order Regarding Emergency Applications

Defendant clearly violated the Court's Standing Order by not making a reasonable effort to notify Plaintiffs' counsel of its intent to seek emergency relief. Defendant intended to seek emergency relief once it undertook preparing the Application, not when they decided it was ready to be filed. Defendant cites to a number of cases where a party may disregard notice and/or meet and confer requirements in seeking emergency relief due to exigency or where meeting and conferring would be futile. There were no exigent circumstances here. Defendant filed the Application a week after Plaintiffs' counsel's last contact with one of the Declarants. This fact undermines any claims of exigency by Defendant.

The violation of the Standing Order was done in bad faith. Had Defense counsel notified Plaintiffs' counsel and sought to meet and confer, it would have obviated the need for the Application. Defense counsel wanted to file this Ex Parte Application to embarrass, harass, annoy and distract Plaintiffs' counsel as they finished their Reply in the class certification proceedings.

## D. The Court Should Issue Rule 11 Sanctions Under the Court's Inherent Authority

Federal courts have the inherent power to impose sanctions against both attorneys and parties "bad faith" conduct in litigation or for "willful disobedience" of a court order. Fed. R. Civ. P. Rule

11(c)(3); *Chambers v. NASCO, Inc.*, 501 US 32, 43 (1991); see also *Roadway Express, Inc. v. Piper*, 447 US 752, 764-766 (1980). The court's inherent powers "are governed not by rule or statute but by control necessarily vested in the courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc., supra*, 501 US at 43. Before a court may impose sanctions against a lawyer or party under its inherent power, it must find that the lawyer or party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers, supra*, at 45-46. Courts have held that that an exercise of inherent authority is proper where compliance with Rule 11's technical requirements is impossible, e.g., where the allegedly sanctionable conduct is a request for preliminary relief, compliance with Rule 11's 21-day safe harbor provision may not be possible. *Methode Electronics v. Adam Technologies, Inc.*, 371 F3d 923, 927 (7th Cir. 2004) (plaintiff proceeded with TRO motion despite defendant's warnings that sanctions would be sought, and plaintiff then voluntarily dismissed action, all within 7 days.)

      Here, Defendant's bad faith conduct is well-documented. The Court should exercise its inherent authority under Rule 11 because Plaintiffs are unable to comply with the requirements of Fed. R. Civ. P. 11(c)(2)'s "safe harbor" provision due to Defendant seeking preliminary relief in the form of a TRO. See *Methode Electronics, supra*, 371 F3d at 927. Plaintiffs served Defendant with its Rule 11 Motion on June 14, 2019 and as of the date of this filing, Defendant has not withdrawn the Application. Barring further instruction from the Court, Plaintiffs presume the Court will rule on the Application at the June 19, 2019 class certification hearing. Thus, the 21-day safe harbor rule will be inapplicable. As such, the Court should issue Rule 11 sanctions on its own motion against Defendant and its counsel in order to deter more bad faith motions that will burden this Court's docket and prevent the orderly, expeditious disposition of this action. In tandem, Plaintiffs will file their proposed Motion for Rule 11 Sanctions at the Court's invitation in order to recover their attorneys' fees incurred due to Defendant's frivolous Application.

### III. CONCLUSION

      Defendant's Ex Parte Application is completely frivolous and warrants the full disciplinary authority of the Court.

Dated: June 17, 2019                                    WYNNE LAW FIRM
                                                                                 By: */s/ Edward J. Wynne*
                                                                                      Edward J. Wynne
                                                                                      Attorney for Plaintiffs